**QUINTON & PETIX**
Stephen V. Petix, Esq. SBN 52706
Email: petix@quintonpetix.com
402 West Broadway, Suite 400
San Diego, California 92101
Telephone: (619) 234-1113
Facsimile: (619) 595-3147

Attorneys for Plaintiff,
Arjang Panah

COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJANG PANAH, | Civil No. CV09-6535 GAF (PLAx) |
| Plaintiff, | **COMPLAINT FOR MONEY DAMAGES** |
| v. | (Federal Tort Claims Act) |
| UNITED STATES OF AMERICA, | Judge: |
| Defendant. | Ctrm: |

Plaintiff ARJANG PANAH, an individual (hereinafter referred to as "Plaintiff" or "Plaintiff Panah"), by and through his attorneys of record, Quinton & Petix, by Stephen V. Petix, Esq., for his complaint for money damages against the UNITED STATES OF AMERICA, alleges:

I.

The Parties:

1. Plaintiff is a resident and citizen of the State of California, County of Los Angeles. Plaintiff brings this complaint for money damages for personal injuries suffered as a result of the negligent and wrongful acts and omissions of the officers, agents and employees of the defendant UNITED STATES OF AMERICA, employed by the Federal Bureau of Prisons.

Complaint for Money Damages (FTCA)                1

2. Defendant is the UNITED STATES OF AMERICA, which operates and controls the Federal Bureau of Prisons (sometimes hereinafter denoted as the "BOP"), which is charged with maintaining custody of sentenced federal prisoners in its many correctional facilities throughout the United States, and whose officers, agents and/or employees negligently and recklessly exposed the Plaintiff to the potentially deadly disease known as Coccidioidomycosis (also known as "Valley Fever" or "San Joaquin Valley Fever") at its prison facility in Kern County, California, known as Taft Correctional Institution (or "Taft C.I.").

II.

Jurisdiction:

3. This action arises from, and this Court has jurisdiction over this action by virtue of the Federal Tort Claims Act, 28 U. S. Code §§ 1346(b), 2671, et seq. The Plaintiff has been injured by the negligent or wrongful acts and omissions of the officers, agents and/or employees of the Defendant UNITED STATES OF AMERICA, acting in the course and scope of their employment.

4. The acts and omissions of which Plaintiff complains took place in the State of California. Accordingly, the law of the State of California controls this action with respect to liability and damages. 28 U. S. Code §§ 1346(b)(1) and 2674.

5. On or about December 12, 2007, Plaintiff timely presented his administrative claim for money damages to the Federal Bureau of Prisons, at the South Central Regional Office, in Dallas, Texas. This claim was denied in writing on June 13, 2008, by the BOP Regional Counsel. Thereafter, on or about November 14, 2008, pursuant to 28 C.F.R. § 14.9(b), Plaintiff timely presented his request for reconsideration of his administrative tort claim, and, simultaneously pursuant to 28 C.F.R. § 14.2(c), submitted a timely amended administrative claim for damages for personal injury to the same BOP office, which was duly received

Complaint for Money Damages (FTCA)                 2

by the BOP on November 20, 2008. Subsequently, Plaintiff's amended administrative tort claim was also denied, by letter of the BOP Regional Counsel, dated March 13, 2009. Therefore, Plaintiff has exhausted his administrative claim remedy under 28 U. S. Code § 2675(a), and this suit is timely filed under 28 U. S. Code § 2401(b).

### III.

### Venue:

6. Venue is proper in the Central District of California, because the Plaintiff resides in this district. 28 U. S. Code §§ 1402(b) and 1391(e)(3).

### IV.

### The Facts Giving Rise to The Complaint:

7. Coccidioidomycosis (commonly known as "Valley Fever" or "San Joaquin Valley Fever" or simply as "cocci") has long been known as a serious infectious disease which is contracted by the inhalation of an airborne fungus, *Coccidioides immitis*, which is endemic in the soil of various areas of the Southwest. Nowhere is it more prevalent than in Kern County in the San Joaquin Valley of California.

8. In June of 1994, the U. S. Centers for Disease Control and Prevention (commonly referred to as the "CDC"), in its publication called the *Morbidity and Mortality Weekly Report* (MMWR) issued an article prepared by a group of physicians and scientists preeminent in the field of infectious disease, entitled "Coccidioidomycosis -- California, 1991-1993." The article reported on the devastating impact of Valley Fever in California, as well as the fact that in the years 1991 through 1993, 70% of the reported cases of coccidioidomycosis in California arose from Kern County, in the San Joaquin Valley. [See full article at: http://www.cdc.gov/mmwr/preview/mmwrhtml/00031453.htm]

9. In September of 1996 Doctors Theo N. Kirkland and Joshua Fierer, both of

the University of California, San Diego, School of Medicine, published an article in *Emerging Infectious Diseases* (another publication of the CDC), entitled "Coccidioidomycosis: A Reemerging Infectious Disease." In this article Doctors Kirkland and Fierer comment on the Valley Fever epidemic of 1991-1993 reported above, and state that: "Kern County, in the San Joaquin Valley, California, is one of the most highly coccidioidomycosis-endemic regions." They also point out later in the article that:

> Simple environmental measures, such as planting grass or paving roads in highly populated areas, decrease the amount of airborne dust and lower the risk for coccidioidomycosis. These measures do not necessarily eradicate *C[occidioides] immitus* from the soil but lower the risk for airborne dispersion of the organism. At present, no practical method exists for eliminating *C[occidioides] immitus* from the soil.

Drs. Kirkland and Fierer also discuss in their article the efforts to develop a vaccine to prevent Coccidioidomycosis, which as of the date of the article had not been successful. [See the full article cited above at: http://www.cdc.gov/ncidod/eid/vol2no3/kirkland.htm]

10.   At no time pertinent to this action was there an effective human vaccine available to prevent the disease Coccidioidomycosis, and none exists today. And once contracted, there is no iatrogenic cure for the disease. Admittedly, the majority of those who contract the disease are asymptomatic and their infections resolve without therapy. One prospective study of cases of Coccidioidomycosis acquired during World War II by servicemen at three San Joaquin Valley airbases, reported that 60% were asymptomatic, 15% were not severe enough to require medical care, and 25% were clinically important and required a substantial amount of time off work. Another more recent study published in 1993, reporting on college students in Tucson who contracted

Coccidioidomycosis, indicated that 35% had a self-limiting pneumonia, although many of them were very ill for weeks to months.

11. It is generally accepted that less than 5% of Coccidioidomycosis infections disseminate and cause miliary disease, bone and joint infections (including osteomyelitis), skin disease, soft tissue abscesses, and meningitis. However, it is well known that disseminated Coccidioidomycosis is progressive, painful, and debilitating, and that it is uniformly fatal once it progresses to meningitis, if left untreated. Surgical excision of tissue and bone is the only medical response for some extrapulmonary infections of Coccidioidomycosis. Certain triazole compounds, including Fluconazole (400 mg/day), have been found to be effective in treating most presentations of Coccidioidomycosis; but the drug must be taken daily, and due to previously experienced high relapse rates when azole therapy is stopped, lifelong treatment with Fluconazole is recommended by Drs. Kirkland and Fierer, mentioned above. The drug is expensive; but failure to take it religiously is even more expensive. Hospitalization for a typical Valley Fever patient has been estimated at about $34,000.00; whereas the more complicated cases of disseminated Coccidioidomycosis, requiring multiple surgeries has been estimated at about $788,000.00, by another leading expert on this disease, Dr. Demosthenes Pappagianis, of U. C. Davis Medical School. [A. Furillo, "Disease clouds a prison's future," *The Sacramento Bee*, Sept. 9, 2007. (Online edition, Sacbee.com)]

12. In June of 2002, federal inmate Kevin Walker filed a claim against the United States for damages under the Federal Tort Claims Act (as well as *Bivens* claims against various entities and individuals), alleging negligence on the part of the Government for having transferred him in December 1999 to Taft C.I., a facility that was constructed by the United States with knowledge that the soil

upon which it was built was contaminated with fungal spores that are known to cause Valley Fever. *Walker v. United States*, 2007 WL 1577687, Case No. 1:02-cv-05801-AWI (E.D. Cal. 2007) (Ishii, D.J.), at *4. Walker also alleged that the Government knew about the presence of the fungal spore when it began transferring federal inmates to Taft C.I. in late 1997, but it did nothing to prevent inmates from being exposed to Valley Fever. *Walker v. United States*, 2008 WL 2074475 (E.D. Cal. 2008) (Austin, M.J.), at *2. In fact, he alleged that the BOP vetoed efforts by the private contractor operating the facility to plant grass to mitigate the dusty conditions. *Id.* The final disposition of this case is unknown, because the file is reported "sealed" by Pacer.

      13.    In January 2004 the BOP itself, i.e., the Chief of the BOP's Office of Quality Management, in Washington, D.C., through the BOP's Medical Director, issued a system-wide memorandum for all BOP Health Services Staff, which included a "Risk Management Alert" for Valley Fever. The alert described the disease as follows: "Valley Fever is another name for the ***sometimes deadly infection*** coccidioidomycosis." (Emphasis added.) The risk management alert goes on to explain [inexactly] that: "It is called valley fever because the organism that causes it is commonly found in the soil of the southwestern United States, Mexico and parts of Central and South America." (Actually, the term arose from the high prevalence of the disease in the San Joaquin Valley of California.) The BOP alert includes the recommendation that: "Persons at risk for valley fever should avoid exposure to dust and dry soil in areas where valley fever is common."

      14.    Epidemiological studies have established that, for unknown reasons, individuals of certain races are at higher risk for developing the disseminated form of Coccidioidomycosis, particularly African-Americans and Filipinos, for whom the risk is tenfold that of the general population. In his aforementioned complaint,

Complaint for Money Damages (FTCA)        6

Taft C.I. inmate Kevin Walker, an African-American, included this among his allegations as proof that his assignment to Taft C.I. by the BOP was with disregard to his health and safety. *Walker v. United States*, Case No. 1:02-cv-05801-AWI, 2008 WL 2074475 (E.D. Cal. 2008) (Austin, M.J.), at *2. Regardless of this reality, the BOP employed no screening process to divert African-Americans or Filipinos from assignment to its Taft C.I., facility, which is situated in Kern County, described by Drs. Kirkland and Fierer as "one of the most highly coccidioidomycosis-endemic regions," and which is further located in the midst of dusty desert terrain, adjacent to irrigated and cultivated agricultural fields.

15. While certain races mentioned above are known to be at substantially higher risk of contracting the worst form of Valley Fever, i.e., disseminated Coccidioidomycosis, there is no known medical standard or test available for determining whether any member of the general population (not previously exposed to Coccidioidomycosis and immunized by prior infection) may or may not be susceptible to contracting this worst form of the disease, which some have described as being worse than cancer.

16. Based on the filing and litigation of the *Walker* case, mentioned above, and its own headquarters memorandum in January 2004, alerting its medical staff systemwide as to the danger of the disease Coccidioidomycosis (Valley Fever), the BOP had indisputable knowledge that this disease was potentially deadly, and that any federal inmate assigned to Taft C.I. was in danger of contracting the disease due to its physical location in the San Joaquin Valley amidst desert and agricultural terrain that generated the dust-borne spores of *Coccidioides immitis*. The only prudent courses open to the BOP were: (1) assign no individual to Taft C.I. who did not have a positive coccidioidin skin test indicating immunity; or (2) take extraordinary measures to prevent all non-immune inmates from exposure to the dust-borne disease; or (3) shut down the

facility as too dangerous for human habitation. Otherwise, the incarceration of human beings at Taft C.I. was the equivalent of conducting a human medical experiment on the inmates, without their consent. While the great percentage of inmates might be expected to survive the disease, for an unacceptable percentage of inmates, including the Plaintiff, assignment to Taft C.I. was a potential death sentence.

17. In May of 2004, in Buffalo, New York, Plaintiff Panah entered a plea of guilty to distribution of a controlled substance (Methamphetamine), and was sentenced by the District Court to serve 72 months in federal prison. Upon entering federal custody, the Plaintiff was in reasonably good health, and had not previously been exposed to the disease Coccidioidomycosis. Plaintiff came to the United States as a teenager, having been born in Tehran, Iran, and was a resident of Rancho Palos Verdes, California, from that time to the time of his arrest. He became a naturalized United States citizen in 2000. He did not travel to the San Joaquin Valley for business or pleasure at any time prior to his assignment to Taft C.I. by the BOP, in February of 2005.

18. Prior to his assignment to Taft C.I., the Plaintiff specifically requested that he be assigned to the BOP facility at Terminal Island, which was closer to his home in Rancho Palos Verdes, where he had resided with his parents prior to his arrest, or to the one at Lompoc, rather than at Taft C.I.. This request was denied by the BOP without any explanation.

19. While the Plaintiff was incarcerated at Taft C.I., the BOP failed to take any particular measures to protect the inmates at Taft from inhaling the naturally occurring airborne dust generated by the desert winds and nearby agricultural activities; nor did the BOP direct the private contractor operating the prison to take any such measures. Plaintiff Panah was not provided any special protective breathing masks or other devices, and to his knowledge there was no

Complaint for Money Damages (FTCA)         8

special air conditioning equipment employed by the facility to filter out the dust occurring in the local environment. Nor was there any prohibition of outdoor activities during dusty conditions.

20. Plaintiff was informed during his imprisonment at Taft C.I. that out of some 1,400 inmates at the facility, perhaps as many as about 80 of them had developed Coccidioidomycosis symptoms acute enough and serious enough to require active treatment for the disease. He also learned that four Taft inmates died of Valley Fever while he was there, one of whom he knew personally.

21. Plaintiff Panah first experienced symptoms of Valley Fever on or about December 17, 2005, including a high temperature, constant coughing, loss of appetite, night sweats and chills, open sores on his body, weakness and fatigue; and by January 9, 2006, he had also developed a painful hydrocele (enlarged epididymis), manifesting itself as a swelling of his scrotum on the right side. After initial misdiagnosis and treatment of his illness as pneumonia, blood test results reported on or about January 11, 2006, confirmed that he was a victim of Valley Fever (Coccidioidomycosis), with a very high Complement Fixation Titer score of 1:512 (a measure of the antibodies for the disease in the blood). (This Titer score is level 9, with level 10 being the highest, at 1:1,024.) Fluconazole treatment (total 600 mg per day) and bed rest was initiated and, initially in early February 2006, his Titer score was reported at 1:128 (level 7). However, in early March and April 2006, Plaintiff's Titer score again climbed to 1:512. Eventually, in early May 2006, his Titer score was reduced to 1:256 (level 8), but various of the symptoms persisted, including the painful hydrocele.

22. At the time of his release from BOP custody, in or about February 2008, it was reported that Plaintiff's Coccidioidomycosis Complement Fixation Titer score was only 1:4 (level 2); however, not long after Plaintiff's release, testing by his private doctor at Kaiser Permanente reported a Titer score of 1:16

Complaint for Money Damages (FTCA)  9

(level 4), and he has since experienced at least one period of illness in October 2008 when his Titer score was at 1:64 (level 6). It is apparent that the disease is still active in Plaintiff's body, and has the potential of resuming its devastating course, should he ever discontinue his daily medication with Fluconazole.

23. Plaintiff has been spending approximately $450.00 per month on doctor, health insurance and medicines since his release from custody, not including time lost from work. And despite his diligent efforts to take his daily medication for the disease, Plaintiff has found that he is very susceptible to any illness, including pneumonia or flu, since his immune system is apparently compromised by Coccidioidomycosis. A recent episode illustrates the point. Plaintiff recently contracted a common cold, but in his case this required emergency room admission and an assisted breathing device due to a collapsed lung. Plaintiff Panah also suffers from chronic bronchitis and asthma, which he never had before contracting Valley Fever at Taft C.I. Additionally, Plaintiff now has breathing problems, phlegm issues, and cannot exercise for an extended period of time, as he could before.

24. As a result of all of the above, Plaintiff's quality of life and enjoyment of life has severely deteriorated. His life expectancy has been decreased considerably. He has experienced severe physical pain and suffering from the various symptoms of the disease known as San Joaquin Valley Fever, when he first contracted the illness; and continues to experience physical discomfort over time, with exacerbated episodes of illness, as mentioned above. He will undoubtedly continue to experience similar pain and suffering in the future.

25. Further, Plaintiff Panah must now live with the anxiety and dread of the potential that he may have the disseminated form of Coccidioidomycosis, which could cause an agonizing course of progressive sickness and premature

death, should he for any reason be unable to continue his daily regimen of 400 mg of Fluconazole to suppress the disease's natural course, and maintain regular access to medical professionals familiar with the disease, who can continue the careful monitoring necessary to keep his Valley Fever in check. He will never be "cured" of Coccidioidomycosis. The best he can hope for is an uneasy truce with the disease, with the help of prescription drugs and knowledgeable doctors. Should Plaintiff lose his job or his health insurance, such hope would likely vanish.

## V.

### FIRST CAUSE OF ACTION

(Negligent or Wrongful Act or Omission)

(Failure to Provide Inmate with Safe and Habitable Prison)

26. Plaintiff hereby incorporates by reference paragraphs 1 through 25, above, as if set forth herein in full.

27. At all times pertinent to this action, the Defendant, through its agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to provide the Plaintiff with a safe and habitable place of incarceration, where he could live and work without contracting a potentially fatal disease, despite his best efforts to pursue a healthy life style and avoid activities that might risk his health.

28. At all times pertinent to this action, the Defendant, through its agents, officers and employees acting within the scope of their offices and employment, negligently and recklessly failed to comply with the aforementioned duty, by instead incarcerating the Plaintiff at Taft, C.I., which it knew to be located on a site regularly immersed in dust containing the airborne spores of *Coccidioides immitis*, known to be the cause of the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever).

29. As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

## VI.

## SECOND CAUSE OF ACTION

(Negligent or Wrongful Act or Omission)

(Premises Liability:Failure to Operate and Maintain Prison Facility in Safe and Habitable Condition)

30. Plaintiff hereby incorporates by reference paragraphs 1 through 29, above, as if set forth herein in full.

31. At all times pertinent to this action, the Defendant, through its agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to operate and maintain the Taft Correctional Institution (Taft C.I.) in such a manner as to ensure that it was reasonably safe and habitable for human beings, and that it harbored no latent defects that constituted a dangerous condition and an unreasonable risk of harm to the health and safety of the federal inmates assigned to said prison, including the Plaintiff.

32. At all times pertinent to this action, the Defendant, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to take steps to either make the aforementioned dangerous condition of Taft C.I. safe or adequately warn Plaintiff of the dangerous condition, to wit, the prison's location on a site regularly immersed in airborne dust containing the airborne spores of *Coccidioides immitis*, all of which caused plaintiff to contract the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), as alleged above, and to suffer the injuries and damages herein described.

//

## VII.

## THIRD CAUSE OF ACTION

(Negligent or Wrongful Act or Omission)

(Assignment of Plaintiff to Prison Facility Knowing It to Be Inherently Unsafe for Human Habitation)

33. Plaintiff hereby incorporates by reference paragraphs 1 through 32, above, as if set forth herein in full.

34. At all times pertinent to this action, the Defendant, through its agents, officers and employees acting within the scope of their offices and employment, knew or should have known that the physical environment in which Taft C.I. was situated was hazardous to human health, and a potentially fatal disease could be contracted by its inmates due to the presence of *Coccidioides immitis* in the soil surrounding the prison, which was impossible to eliminate from the soil and the air that carried the dust-borne fungus spores that cause the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), as alleged above.

35. Despite the foregoing knowledge, the Defendant, through its agents, officers and employees acting within the scope of their offices and employment, and as the owner of Taft C.I., failed to provide the private contractor chosen to operate the prison with a facility that could provide the inmates assigned there with safe air to breathe, failed to provide the contractor with directions and guidance with respect to inmate activity restrictions to prevent dust inhalation, and failed to provide adequate equipment and resources to either reduce the disease-bearing dust or to prevent dust inhalation by the inmates assigned to Taft C.I. This prison was, in essence, a petri dish for Valley Fever, into which the BOP inserted human beings without their consent.

Complaint for Money Damages (FTCA)        13

36. Despite the foregoing knowledge of the dangerousness of the disease Coccidioidomycosis, and the total inadequacy and inability of the prison facility and its management to prevent exposure of federal inmates to the disease, the Defendant as owner of the prison, and through its agents, officers and employees acting within the scope of their offices and employment, negligently and recklessly exercised its power and authority to assign Plaintiff Panah to Taft C.I., for an extended period of incarceration, effectively exposing him to Coccidioidomycosis without his consent and against his will, ignoring his request to be assigned elsewhere.

37. As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

## VIII.

## DAMAGES

38. As a direct and proximate result of the aforesaid negligent or wrongful acts or omissions, Plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his person, all of which has caused and continues to cause Plaintiff substantial physical pain and suffering and debilitation, as well as severe worry, anxiety and emotional distress, as to the potential future course of his incurable disease.

39. As a further proximate result of the aforesaid negligent or wrongful acts or omissions, Plaintiff has been damaged, in that he has incurred, and will continue to incur, medical and related expenses.

40. As a further proximate result of the aforesaid negligent or wrongful acts or omissions, Plaintiff has been damaged, in that he has lost substantial earnings from time to time, due to temporary total work disability due to illness, which has resulted in time lost from work, because of his physical injury (the

contracting of the disease Coccidioidomycosis). Plaintiff also faces a shortened work life expectancy, due to the continuing pain and discomfort, weakness and fatigue and pulmonary symptoms caused by the disease Coccidioidomycosis, of which he will never be cured, despite the diligent pursuit of appropriate medical treatment for said condition. Premature death due to the disease is likewise possible, should it disseminate and progress to meningitis.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against the Defendant United States of America, as follows:

1. For general damages according to proof;
2. For medical and related expenses, according to proof;
3. For lost earnings, past and future;
5. For total money damages in the amount of $2,500,000.00.
6. For costs of suit incurred herein;
7. For interest, as allowed by law;
8. For such other and further relief as the Court may deem proper.

DATED: September 4, 2009                    QUINTON & PETIX

By: STEPHEN V. PETIX
Attorneys for Plaintiff
Arjang Panah

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Paul L. Abrams.

The case number on all documents filed with the Court should read as follows:

## CV09- 6535 GAF (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address
Quinton & Petix, by
Stephen V. Petix
402 West Broadway, Ste. 400
San Diego, CA 92101
Phone: 619-234-1113

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Arjang Panah, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | **CV09 -6535 GAF (PLAx)** |
| United States of America, | SUMMONS |
| DEFENDANT(S). | |

TO: DEFENDANT(S): United States of America

A lawsuit has been filed against you.

Within __60__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Stephen V. Petix_____, whose address is _Quinton & Petix, 402 West Broadway, Suite 400, San Diego, CA 92101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: SEP - 9 2009

Clerk, U.S. District Court

By: **DODJIE GARGANTOS**    SEAL
    Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Arjang Panah | United States of America |

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Quinton & Petix, by Stephen V. Petix
402 West Broadway, Suite 400
San Diego, CA 92101

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 2,500,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S. Code Secs. 1346(b), 2671 et seq. (Federal Tort Claims Act). Personal injury due to negligence/wrongful acts by Federal officers, agents or employees.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | | | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | | **CIVIL RIGHTS** | ☐ 610 Agriculture | |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco- mmodations | | ☐ 840 Trademark |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| | **REAL PROPERTY** | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |

FOR OFFICE USE ONLY: Case Number: **CV09-6535 GAF (PLAx)**
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08) CIVIL COVER SHEET Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| UNKNOWN. | Kern County; |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  9/4/2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |