1  ANDRÉ BIROTTE JR.
   United States Attorney
2  LEON W. WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF (CA 141489)
4  Assistant United States Attorney
        Room 7516 Federal Building
5       300 North Los Angeles Street
        Los Angeles, California 90012
6       Telephone: (213) 894-6880/7423
        Fax No.: (213) 894-7819
7       Joanne.Osinoff@usdoj.gov

8  Attorney for Defendant
   United States of America
9

10                      UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                          WESTERN DIVISION

13

14  ARJANG PANAH,                    )  No. CV 09-6535 GAF (PLAx)
                                     )
15       Plaintiff,                  )
                                     )
16            v.                     )  Date: August 22, 2011
                                     )  Time: 9:30 a.m.
17  UNITED STATES OF AMERICA,        )  Place:
                                     )     Roybal Courthouse
18       Defendant.                  )     255 East Temple Street
                                     )     Los Angeles, CA 90012
19  _____ )  Hon. Gary A. Feess

20            DEFENDANT'S NOTICE OF MOTION AND

21      MOTION TO DISMISS OR IN THE ALTERNATIVE,

22      FOR SUMMARY JUDGMENT; MEMORANDUM IN

23      SUPPORT THEREOF; AND DECLARATIONS OF

24      RICHARD COHN, DOUGLAS MARTZ, JAMES

25      PELTON, M.D., ANTONINO CATANZARO, M.D.,

26      AND JOANNE OSINOFF

27

28

CV09-6535.20110620.JSO.Motion for Summary Judgment_mtd.wpd

# <u>TABLE OF CONTENTS</u>

Page

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT . . . . . . . . . . . . . 2

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . 1

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.     THIS COURT LACKS SUBJECT MATTER JURISDICTION
              BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE
              DISCRETIONARY FUNCTION EXCEPTION TO THE FEDERAL
              TORT CLAIMS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.     THE UNITED STATES MAY NOT BE HELD LIABLE UNDER
              THE FTCA FOR CONTRACTOR TORTS . . . . . . . . . . . . . . . . . . 16

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

DECLARATION OF JOANNE S. OSINOFF . . . . . . . . . . . . . . . . . . . . . . . . 21

EXCERPTS OF DEPOSITION OF ARJANG PANAH . . . . . . . . . . . . . . . . . . 22

DECLARATION OF RICHARD A. COHN . . . . . . . . . . . . . . . . . . . . . . . . . 51

DECLARATION OF DOUGLAS M. MARTZ . . . . . . . . . . . . . . . . . . . . . . . 54

DECLARATION OF JAMES PELTON, M.D. . . . . . . . . . . . . . . . . . . . . . . . 58

DECLARATION OF ANTONINO CATANZARO, M.D. . . . . . . . . . . . . . . . . 63

# TABLE OF AUTHORITIES

## FEDERAL CASES

Agent Orange,
        818 F.2d 194 (2d Cir. 1987) .......................................................... 13

Alfrey v. United States,
        276 F.3d 557 (9th Cir. 2002) ........................................................ 9

Allen v. United States,
        816 F.2d 1417 (10 Cir. 1987) ...................................................... 13

American Exchange Bank of Madison v. United States,
        257 F.2d 938 (7th Cir. 1958) ....................................................... 15

Angle v. United States,
        89 F.3d 832 (6th Cir. 1996) .......................................................... 13

Arnold v. United States,
        140 F.3d 1037 (5th Cir. 1998) ...................................................... 13

Barnson v. United States,
        816 F.2d 549 (10 Cir. 1987) ......................................................... 13

Begay v. United States,
        768 F.2d 1059 (9th Cir. 1985) ...................................................... 12

Bell v. Wolfish,
        441 U.S. 520 (1979) ............................................................... 10, 11

Block v. North Dakota,
        461 U.S. 273 (1983) .................................................................... 7

Bramer v. United States,
        412 F. Supp. 569 (C.D. Cal. 1976) ............................................. 19

Brucker v. United States,
        338 F.2d 427 (9th Cir. 1964) ....................................................... 17

Buchanan v. United States,
        915 F.2d 969 (5th Cir. 1990) ....................................................... 10

Calderon v. United States,
        123 F.3d 947 (7th Cir. 1997) ....................................................... 12

Castor v. United States,
        883 F. Supp. 344 (S.D. Ind. 1995) .............................................. 11

Caudle v. United States,
        72 F.3d 132  1995 WL 730817 (7th Cir. 1995) ........................... 11

# FEDERAL CASES CONT'D

Cheng Fan Kwok V. Immigration and Naturalization Service,
 392 U.S. 206 (1968) ........................................................ 7

Cisco v. United States,
 768 F.2d 788 (7th Cir. 1985) ........................................ 13

Cohen v. United States,
 151 F.3d 1338 (11th Cir. 1998) ........................... 9, 10, 12

Consolidated United States Atmospheric Testing Litigation,
 820 F.2d 982 (9th Cir. 1988) ........................................ 12

DSI Corp. v. HUD,
 594 F.2d 177 (9th Cir. 1979) ........................................ 7

Dalehite v United States,
 346 U.S. 15 (1953) ..................................................... 8, 9

Dykstra v. United States Bureau of Prisons,
 140 F.3d 791 (8th Cir. 1998) ........................................ 11

Federal Deposit Insurance Corp. v. Craft,
 157 F.3d 697 (9th Cir. 1998) ........................................ 7

Hutchinson v. United States,
 677 F.2d 1322 (9th Cir. 1982) ...................................... 6

Joint Eastern and Southern Districts Asbestos Litigation,
 891 F.2d 31 (2d Cir. 1989) .......................................... 13

Kennewick Irrig. District v. United States,
 880 F.2d 1018 (9th Cir. 1989) ...................................... 8

Kirk v. United States,
 270 F.2d 110 (9th Cir. 1959) .................................. 17, 18

Letnes v. United States,
 820 F.2d 1517 (9th Cir. 1987) ................................. 18, 19

Lewis v. United States,
 680 F.2d 1239 (9th Cir. 1982) ................................. 17, 18

Lively v. United States,
 870 F.2d 296 (5th Cir. 1989) ....................................... 13

Lockett v. United States,
 938 F.2d 630 (6th Cir. 1991) ....................................... 13

Logue v. United States,
 412 U.S. 521 (1973) ............................................... 17, 18

# FEDERAL CASES CONT'D

Loughlin v. United States,
    393 F.3d 155 (D.C. Cir. 2004) ...................................................... 12

Maas v. United States,
    94 F.3d 291 (7th Cir. 1996) ......................................................... 13

Merklin v. United States,
    788 F.2d 172 (3rd Cir. 1986) ................................................. 13, 18

Miens v. United States,
    155 F.3d 445 (4th Cir. 1998) ....................................................... 12

Sabow v. United States,
    93 F.3d 1445 (9th Cir. 1996) ......................................................... 7

Savary v. United States,
    205 F.3d 1352 (9th Cir. 1999) ..................................................... 12

Sea-Land Service, Inc. v. United States,
    919 F.2d 888 (3d Cir. 1990) ....................................................... 13

Sisley v. United States,
    202 F. Supp. 273 (D.C. Alaska 1962) ........................................... 15

United States v. Gaubert,
    499 U.S. 315 (1991) ................................................................. 8, 9

United States v. Mitchell,
    445 U.S. 535 (1980) ...................................................................... 6

United States v. Muniz,
    374 U.S. 150 (1963) ...................................................................... 7

United States v. Orleans,
    425 U.S. 807 (1976) ......................................................... 6, 17, 18

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
    467 U.S. 797 (1984) ................................................................. 7, 8

United States v. Sherwood,
    312 U.S. 584 (1941) ...................................................................... 6

United States v. Testan,
    424 U.S. 392 (1976) ...................................................................... 6

Whitley v. Albers,
    475 U.S. 312 (1986) .................................................................... 11

Valet v. United States,
    2006 WL 624897 (E.D.N.Y. 2006) ............................................... 15

# FEDERAL STATUTES

18 U.S.C. §3621(b) ............................................................................ 11

18 U.S.C. §4042 ................................................................................. 12

28 U.S.C. §1346(b) ............................................................. 1, 6, 7, 16, 17

28 U.S.C. §2671 .......................................................................... 1, 6, 17

28 U.S.C. §2680(a) ........................................................................... 1, 7

## DEFENDANT'S NOTICE OF MOTION AND MOTION

## TO DISMISS OR IN THE ALTERNATIVE, FOR

## SUMMARY JUDGMENT

PLEASE TAKE NOTICE THAT on August 22, 2011 at 9:30 a.m., or as soon thereafter as the parties may be heard, defendant United States of America will move for an Order dismissing this action or in the alternative, entering summary judgment in its favor in the above-captioned action.  The hearing will take place before the Honorable Gary A. Feess, United States District Court Judge, in his courtroom, Roybal Courthouse, 255 East Temple Street, Los Angeles, California 90012.

Defendant, by and through its undersigned counsel, will and hereby does move this Court for an Order dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that this Court lacks jurisdiction over the subject matter of plaintiff's complaint.  Plaintiff's claims are barred by the doctrine of sovereign immunity.  The discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), protects the security decisions of the United States.  Additionally, to the extent that the Court finds the action to be one for medical negligence, defendant is equally entitled to dismissal as the acts upon which plaintiff bases his complaint are the acts of independent contractors and not the acts of federal employees.  No FTCA liability attaches for the acts of independent contractors.  Alternatively, defendant will and hereby does move this Court for an Order entering summary judgment on behalf of the United States pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law.

The parties have complied with Local Rule.  The parties have discussed the anticipated filing of this Motion on numerous occasions.  Plaintiff has been notified by defendant of the grounds for said Motion and the outcome sought.

1    This motion is based upon this Notice, the Memorandum of Points and

2  Authorities and Declarations of James Pelton, M.D., Douglas Martz, Richard

3  Cohn, Antonino Catanzaro, M.D., and Joanne Osinoff, attached hereto,

4  incorporated herein and filed herewith, and the pleadings and files herein.

5  Dated: June 17, 2011

                                    Respectfully submitted,
6                                   ANDRÉ BIROTTE JR.
                                    United States Attorney
7                                   LEON W. WEIDMAN
                                    Assistant United States Attorney
8                                   Chief, Civil Division

9                                   /s/ Joanne S. Osinoff
10                                  _____
                                    JOANNE S. OSINOFF
11                                  Assistant United States Attorney
                                    Attorneys for Defendant
12                                  United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiff Arjang Panah brings this action against defendant United States seeking money damages pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671 et seq.  Plaintiff alleges that he contracted Valley Fever while incarcerated at Taft Correctional Institution  ("TCI Taft").  In his three count Complaint, Plaintiff challenges the government's security decisions including his designation to TCI Taft, the failure to warn of that the prison is located on a site where inmates may be exposed to Valley Fever, and the failure to prevent exposure to Valley Fever.  As demonstrated herein, plaintiff's tort claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. §2680(a).  Additionally, should the Court interpret this case as one for medical malpractice, there is no waiver of sovereign immunity for the wrongful acts of independent contractors. Accordingly, this Court lacks subject matter jurisdiction and plaintiff's complaint should be dismissed and judgment entered for the defendant.

### II.

### STATEMENT OF FACTS

In 2004, plaintiff, Arjang Panah, (born in July 1968 in Tehran, Iran) pled guilty to distribution of a controlled substance (Methamphetamine) and was sentenced to six years in federal prison.  Complaint, ¶17; Declaration of Joanne Osinoff ("Osinoff Dec."), 11:4-12, 12:13-16.[1]  Plaintiff was first incarcerated outside of California, and subsequently transferred to TCI Taft on April 1, 2005. Id., 11:4-12, 51:3-25-52:1-17.  He remained incarcerated at TCI Taft for slightly more than one year.  Id.  In December 2005 or early 2006,  during his incarceration

---

[1]    Attached to the Osinoff Declaration are excerpts from the plaintiff's deposition transcript.  Each reference is identified first by page number and following the semicolon by the citation to the lines of text on the specific page.

at TCI Taft, plaintiff was told by the medical staff that he had Coccidioidomycosis, also known as Valley Fever.  Id., 51:3-25, 52:1-6, 142:16-25, Blood is drawn to test for Valley Fever.  Id., 145:24-25, 146:1. Plaintiff had blood drawn and was given medication.  Id., 144:18-24, 145, 10-16.  On May 15, 2006, plaintiff was transferred to Federal Correction Institution LaTuna, Texas in May 2006.  Id., 51:25, 52:1-6.  Plaintiff was released from federal custody in 2008.  Id., 34:6-24, 35:5-11, 52:9-17.

While at TCI Taft, plaintiff was housed in dorrmitory style.  Id., 106:15-18. There were three dormitories, two libraries, one in his dormitory and one in the education building, a cafeteria building, a health unit, reception/visitation area and a commissary, and a recreation yard with grass baseball fields, a football field, handball, tennis and a gravel track.  Id., 109:1-22, 113:13-20, 117:1-15, 128:9-25, 134:1-2, 137:9-25, 139:16-23.  There were cement walkways which plaintiff used when he went from building to building at TCI Taft.  Id., 130:14-22, 140:1-6.  The recreation yard was covered with grass, gravel, cement, shrubs and sand.  Id., 131:1-25, 132:1-25, 133:1-25, 134:1-2.  Similarly, the outdoor areas which were not cemented were also covered with grass, gravel, shrubs and sand.  Id., 131:22-25, 132:1-25, 133:1-25, 134:1-2.  Use of the recreation yard was optional; although plaintiff spent time there almost every day.  Id., 128:3-8, 129:1-25, 130:9-13. Plaintiff's job at TCI Taft was in the education building teaching other inmates in preparation for the GED (high school graduation equivalent).  Id., 110:8-9. Plaintiff never had a job at TCI Taft that required him to work with the soil.  Id., 141:10-13.

Coccidioidomycosis ("Cocci"), also known as Valley Fever, is a fungal disease, which lives in the soil of semiarid areas, and is endemic in parts of the southwestern United States, parts of Mexico and South America. Declaration of James Pelton, M.D., ("Pelton Dec."), ¶10; Declaration of Antonino Catanzaro, M.D., ("Catanzaro Dec."), ¶2.  Within the United States, Cocci is found in

California, Nevada, New Mexico, Utah, Texas, and Arizona.  Catanzaro Dec. ¶2.
In California, the soil is infected as far north as Chino and as far south as the
boarder with Mexico.  Most cases are diagnosed in Arizona.  Id.  Even in the most
hyperendemic regions the majority of residents remain uninfected.  Id. ¶2, 6.

Cocci is naturally endemic to the soil; it has been in the soil for thousands of
years.  Pelton Dec. ¶10; Catanzaro Dec. ¶4.  Once soil becomes infected with the
Cocci fungus, there is no known way to eliminate or eradicate Cocci spores from
soil.  Id.  Cocci has the capacity to survive long periods of drought and grows at
salt concentrations that kill many other soil microbes. Catanzaro Dec. ¶3.  The
infectious elements of Cocci become airborne, they can be carried by the wind over
very long distances.  Id.  If infected air is inhaled by a human (or mammal), it
transforms into a spherule and proliferates in the body in that form.  Id.  Cocci is
not contagious in that it is not spread person to person.  Pelton Dec. ¶10; Catanzaro
Dec. ¶6.

Persons of African-American and Filipino descent, pregnant women during
the third trimester and immuno-compromised persons are at increased risk for
developing disseminated forms of Cocci.  Pelton Dec.¶12; Catanzaro Dec. ¶5.
Science has not yet developed an understanding of all the reasons for these
epidemiolgoic observations.  Catanzaro Dec. ¶6.  There are no known restrictions
on working or living in areas endemic to Cocci.  Pelton Dec. ¶16; Catanzaro Dec.
¶2.

TCI Taft is a federal prison located in Taft, California.  Declaration of
Douglas Martz ("Martz Dec."), ¶4.  In mid-2004, it came to the attention of the
BOP that the number of inmates diagnosed with Cocci at TCI Taft had increased
from the numbers of inmates diagnosed with Cocci during the same months in
2003.  Pelton Dec. ¶7.  Additionally, the number of individuals diagnosed with
Cocci in Kern County had also risen from 2003 to 2004.  Id.

As a result of this increase in cases, the BOP contacted the Center for

1   Disease Control ("CDC") in order to initiate an investigation.  Pelton Dec. ¶8.
2   Representatives of the BOP, CDC, California State Department of Health, Kern
3   County Public Health participated.  Pelton Dec. ¶8.  The investigation focused on
4   inmates diagnosed with Cocci during the period January 1, 2003 through October
5   31, 2004.  Id., ¶9.  As part of the investigation, 79 inmate patient charts were
6   reviewed.  Eighty-seven inmates had been diagnosed with Cocci, however, not all
7   charts could be obtained as some inmates were no longer at TCI Taft or no longer
8   in the BOP system.  Id.  The investigation concluded that early diagnosis is
9   beneficial and that the earlier prescription of Fluconazole did not substantially
10  change the patient's outcome from the late prescription of Fluconazole.  Id.

11      Risk factors for Cocci, as found in the inmate charts reviewed, included
12  inmates with immune deficiencies (e.g., inmates who had had transplants or were
13  HIV positive) as well as persons of African American or Filipino descent.  Pelton
14  Dec. ¶12.  Accordingly, in late September 2004, in the exercise of judgment, the
15  BOP began transferring high risk inmates from TCI Taft and excluding high risk
16  inmates from designation to or transfer to TCI Taft.  Pelton Dec. ¶13.  Such high
17  risk inmates were persons who were on chemotherapy, those currently on
18  immunosuppressant medications, and inmates who were HIV positive.  Id.  Panah
19  had no obvious risk factors for Cocci.  Catanzaro Dec. ¶7.  Inmates were not
20  designated to the prison or transferred from the prison based exclusively on race as
21  that is contrary to BOP policy.  Pelton Dec. ¶14.  In 2005, inmates continued to be
22  diagnosed with Cocci, although at a lower rate.  Pelton Dec. ¶15.

23      No federal regulatory agency has issued a restriction on living or working in
24  Kern County or any other area within the United States where Cocci is endemic.
25  Pelton Dec. ¶16.  Moreover, there are no statutes, regulations or BOP program
26  statements that require a warning to be issued to inmates about the possibility of
27  Cocci infection.  Pelton Dec. ¶18.  In considering whether to warn, BOP balanced
28  broad policy considerations, including but not limited to, reliance to on CDC,

1   security concerns for both inmate and staff, and effectiveness of any such warning.

2   Id.

3        During the time period of April 1, 2005 to May 15, 2006, when plaintiff was

4   incarcerated there, TCI Taft was a government owned-contractor operated prison,

5   of which plaintiff was aware.  Osinoff Dec., 123:3-8; Martz Dec. ¶4.  In July 1997,

6   the BOP awarded the contract for the management of the TCI Taft to Wackenhut

7   Corrections Corporation, later known as the GEO Group.  Martz Dec. ¶4.  The

8   contract between the BOP and GEO for the operation of TCI Taft was a

9   performance-based contract.  Id.. ¶5.  BOP evaluated the ultimate performance of

10  the contract by GEO, however, BOP was not involved in the day-to-day operations

11  at TCI Taft nor did BOP physically supervise individual GEO employees in their

12  day-to-day activities at TCT Taft.  Id., ¶7.  BOP did not hire individual GEO

13  employees.  Id., ¶6.  Nor did the BOP have the authority to fire individual

14  employees of GEO.  Id.  Contract sums were paid to GEO for operational expenses

15  including employee salaries.  Id.

16       The contract required that GEO operate, staff and maintain a Health Unit at

17  TCI Taft to provide medical care and treatment, as needed, to inmates during their

18  terms of incarceration.  Id., ¶9.  All physicians and all other health care providers

19  working in the Health Unit at TCI Taft during the term of the contract, including

20  the years 2005-2006, were GEO employees.  Id.  Similarly, the Warden and all

21  correctional officers at TCI Taft were GEO employees during the term of the

22  contract, including 2005-2006.  Id., ¶10.

23       The designation of an individual to a specific prison is a BOP judgment

24  decision.  Id., ¶11. GEO did not determine who would be sent to Taft; nor did GEO

25  decide who would be transferred from TCI Taft.  GEO could request an inmate

26  transfer, but that decision remained with the BOP.  Id.  The decision to designate

27  an individual prisoner at a specific correctional institution is a BOP judgment

28  involving policy considerations including inmate safety, prison security and

1   effective use of prison resources, budgetary, staffing and otherwise.  Id., ¶12.

2   There are no statutes, regulations or BOP program statements which compel a

3   specific designation for an inmate to a specific penal institution.  Id.

4        Similarly, there are no statutes, regulations or BOP program statements

5   which mandate specific locations for federal prisons.  Declaration of Richard

6   Cohn, ("Cohn Dec."), ¶4.    Nor are there any statutes, regulations or BOP program

7   statements which compel the construction of a prison in a specific location or

8   which compel the opening or closing of a federal prison.  Id., ¶¶4, 6.  These

9   decisions rest with the BOP and are an exercise of judgment involving broad

10  policy considerations, balancing protection of the public, inmate population growth

11  needs and secure facility requirements with available resources, including land,

12  manpower, budgetary and otherwise.  Id., ¶¶5, 7.

13                                    III.

14                                  ARGUMENT

15  A.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

16        BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE

17        DISCRETIONARY FUNCTION EXCEPTION TO THE FEDERAL

18        TORT CLAIMS ACT

19        It is axiomatic that the United States as sovereign is immune from suit

20  except to the extent it consents to be sued.  United States v. Mitchell, 445 U.S. 535,

21  538 (1980); United States v. Testan, 424 U.S. 392 (1976); United States v. Orleans,

22  425 U.S. 807 (1976).  "Terms of the consent to be sued in any court define that

23  court's jurisdiction to entertain the suit."  United States v. Sherwood, 312 U.S. 584,

24  586 (1941).  Absent consent to be sued, dismissal of the action is required.

25  Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982).

26        The FTCA is a limited waiver of sovereign immunity.  28 U.S.C. §§1346(b),

27  2671 et seq.  Personal injury claims arising out of the "negligent or wrongful act or

28  omission of any employee of the Government while acting within the scope of his

office or employment" are exclusively cognizable under the FTCA.  28 U.S.C. §1346(b); DSI Corp. v. HUD, 594 F.2d 177, 180 (9th Cir. 1979).  When Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed and exceptions thereto are not to be lightly implied.  Block v. North Dakota, 461 U.S. 273, 287 (1983).  See also, Cheng Fan Kwok V. Immigration and Naturalization Service, 392 U.S. 206, 212 (1968)(Jurisdictional statutes "must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes.")

In making the federal government liable for tort damages in a limited class of cases, Congress was careful "to protect the Government from liability that would seriously handicap efficient government operations." United States v. Muniz, 374 U.S. 150, 163 (1963).  The FTCA's waiver of sovereign immunity is to be "strictly construed" in the government's favor, and courts are not authorized to "enlarge the waiver beyond what the statute requires." Federal Deposit Ins. Corp. v. Craft, 157 F.3d 697, 707 (9th Cir. 1998).

The discretionary function exception to the FTCA precludes government liability for "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. §2680(a).  The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).  If the discretionary function exception applies, then the court lacks subject matter jurisdiction and the action must be dismissed.  Id. at 814; Sabow v. United States, 93 F.3d 1445, 1451 (9th Cir. 1996).

/ / /

1        The Supreme Court has enunciated a two part test for determining whether

2  the discretionary function exception applies.  United States v. Gaubert, 499 U.S.

3  315, 324-25 (1991).   First, a court must ask whether the act or omission involves

4  an element of judgment or choice.  Gaubert, 499 U.S. at 322; Varig, 467 U.S. at

5  813.  The question is whether there is room for choice in the decision making or

6  whether the decision is required by a mandatory policy.  Id.   Second, if the

7  conduct at issue does involve the exercise of judgment or choice, then the Court

8  must focus on whether "that judgment is grounded in considerations of public

9  policy."  Gaubert, 499 U.S. at 322-323.  In other words, the Court must ask

10  whether the judgment is the kind that the discretionary function exception was

11  designed to shield.  Id., at 322-23.

12        When established policy allows government agents to exercise discretion, it

13  **must be presumed** that the agent's acts are grounded in policy when exercising

14  that discretion.  Id. at 324 (emphasis added).   Under the discretionary function

15  exception, the decision need not be actually grounded in policy considerations, but

16  must be, by its nature, susceptible to a policy analysis.  Gaubert, 499 U.S. at 325

17  ("the focus of the inquiry is not on the agent's subjective intent in exercising the

18  discretion conferred by statute or regulation, but on the nature of the actions taken

19  and on whether they are susceptible to policy analysis"); Kennewick Irrig. Dist. v.

20  United States, 880 F.2d 1018, 1028 (9th Cir. 1989) (same).

21        If both prongs of the test are satisfied, then the discretionary function

22  exception applies to bar the suit.  Thus, section 2680(a) protects a Federal

23  employee's conduct whenever he or she must "act according to one's judgment of

24  the best course."  Dalehite v United States, 346 U.S. 15, 34 (1953).

25        "[T]he purpose of the exception is to prevent judicial second-guessing

26        of legislative and administrative decisions grounded in social,

27        economic, and political policy through the medium of an action in

28        tort."

1  Gaubert, 499 U.S. at 323.

2      In determining the application of the discretionary function exception, the
3  Supreme Court specifically did not focus on the subjective intent of the
4  government employee exercising discretion, whatever his or her rank or status.
5  Gaubert at 322; Varig at 813.  Nor did the Supreme Court inquire whether the
6  employee actually weighed social, economic, and political policy considerations
7  before acting.  Rather the Court focused on the "nature of the actions taken and
8  whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325.
9  Discretionary decisions are those involving judgment or choice.  If a statute,
10  regulation or policy specifically prescribes a specific course to follow, without
11  choice, the discretionary function will not apply.  Alfrey v. United States, 276 F.3d
12  557, 561 (9th Cir. 2002).[2]

13      Moreover, negligence is irrelevant to the discretionary function analysis.
14  "Congress exercised care to protect the government from claims, however
15  negligently caused, that affected the governmental functions." Dalehite, 346 U.S.
16  at 34.

17      In the case at bar, plaintiff challenges the government's security decisions
18  regarding the assignment of Panah to TCI Taft, the failure to prevent exposure to
19  Cocci, the failure to warn of the possible exposure to Cocci at TCI Taft.  Such
20  decisions are committed to the broad discretion and judgment of the BOP and each
21  involves policy analysis and consideration.  Accordingly, these decisions are
22  protected by the discretionary function exception to the FTCA.

23      In Cohen v. United States, 151 F.3d 1338 (11th Cir. 1998), the plaintiff, an
24  inmate, claimed that he was attacked by another inmate due to the government's
25  negligent determination of the attacker's custody classification and negligent
26  placement or assignment of the attacker to a minimum security prison.  Id. at 1340.

27  _____

28      [2]   In Alfrey, 276 F.3d at 563, the CIM classification of a state prisoner was found
to be nondiscretionary.  That classification is not in issue in this case.

The court rejected the plaintiff's arguments and barred the action based upon the discretionary function exception to the FTCA. Examining the conduct at issue, the court found discretion and judgment in the prison's determinations and further found the nature of the decisions to be susceptible to policy analysis. Id. at 1343. The court held: "Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy laden endeavor of maintaining order and preserving security within our nation's prisons." Id. at 1344. The court emphasized:

> "This case exemplifies the type of case Congress must have had in mind when it enacted the discretionary function exception. Under Cohen's theory, anytime a prisoner is injured by another prisoner, he can bring an action claiming that the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, or in not removing that prisoner based upon some prior incident, or in not restricting his movement or in not providing more guards and so forth. Such second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort."

Id. at 1344.

It is well established that "prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Buchanan v. United States, 915 F.2d 969, 971 (5th Cir. 1990) citing Bell v. Wolfish, 441 U.S. 520, 547 (1979). "That deference requires that neither judge nor jury freely substitute their judgment for that of

1    officials who have made a considered choice." Id. at 972, citing Whitley v. Albers,

2    475 U.S. 312, 322 (1986).

3    　　　See also , Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795 (8th

4    Cir. 1998)("Prison officials supervise inmates based upon security levels, available

5    resources, classifications of inmates and other factors.  These factors upon which

6    prison officials base such decisions are inherently grounded in social, political and

7    economic policy."); Caudle v. United States, 72 F.3d 132 (Table), 1995 WL

8    730817 (7th Cir. 1995)(prisoner's injury claims based upon negligent unit

9    assignment and negligent supervision allegedly resulting in assault were barred by

10   discretionary function exception where Bureau of Prisons had discretion over the

11   manner in which it provided for safekeeping and protection of prisoners based on

12   issues of public policy, including appropriate allocation of resources and effective

13   provision of prison security); Castor v. United States, 883 F.Supp. 344 (S.D. Ind.

14   1995)(Decisions regarding conditions of confinement, including asbestos

15   abatement within the prison, balance safety interests of the inmates and staff with

16   costs and procedures available and practical necessities of prison management and

17   cannot form the basis of liability based upon the discretionary function exception).

18   　　　There are no statutes, regulations or BOP program statements which

19   mandate the assignment of a prisoner to a specific prison.  Martz Dec. ¶12.  In fact,

20   it is quite the opposite.  See 18 U.S.C. §3621(b).  The BOP is given discretion in

21   designating and transferring inmates to available prisons.  In choosing a prison

22   assignment or designation for an inmate, the BOP balances broad policy

23   considerations including inmate safety, prison security and effective use of prison

24   resources, budgetary, staffing and otherwise. Martz Dec. ¶13.  Additionally, the

25   BOP balances factors including but are not limited to, the history and

26   characteristics of the prisoner, the nature and circumstances of the offense, and the

27   resources of the contemplated facility.  Id.  These decisions are precisely those that

28   the discretionary function exception was designed to protect.

In his Complaint, plaintiff relies on the language of 18 U.S.C. §4042, presumably to preclude the application of the discretionary function exception. Section 4042 provides, in pertinent part, that the "Bureau of Prisons, under the direction of the Attorney General shall provide for the safekeeping, care and protection of all persons charged with or convicted of offenses against the United States." It is well established, however, that the government retains sufficient discretion in the manner and means it may use to fulfill this duty to trigger the discretionary function exception. <u>Cohen v. United States</u>, 151 F.3d 1338 (11th Cir. 1998), cert denied, 526 U.S. 1130 (1999); <u>Calderon v. United States</u>, 123 F.3d 947 (7th Cir. 1997).

Plaintiff's second claim is that the BOP failed to warn inmates regarding the exposure to Cocci. These decisions are similarly grounded in policy analysis and discretion and cannot provide the basis for suit. It is well established that the failure to warn the public of dangers in the environment is a protected discretionary function. See <u>In re Consolidated United States Atmospheric Testing Litig.</u>, 820 F.2d 982 (9th Cir. 1988)(failure to warn participants in atomic weapons testing programs of dangers to which they would be exposed).

See also <u>Savary v. United States</u>, 205 F.3d 1352 (9th Cir. 1999) (Table) (failure to warn of hazardous chemicals contaminating soil and water at laboratory); <u>Begay v. United States</u>, 768 F.2d 1059 (9th Cir. 1985)(failure to warn uranium miners of radiation exposure); <u>Loughlin v. United States</u>, 393 F.3d 155 (D.C. Cir. 2004) (failure to warn residents that land was used by government for chemical warfare research and testing during World War I); <u>Miens v. United States</u>, 155 F.3d 445 (4th Cir. 1998) (failure to warn that inoculations and exposure to toxins and pesticides administered by military to servicemen in anticipation of possible biological and chemical attacks may cause birth defects); <u>Arnold v. United States</u>, 140 F.3d 1037 (5th Cir. 1998) (failure to warn that inoculations in anticipation of possible biological and chemical attacks may cause birth defects);

1   Angle v. United States, 89 F.3d 832 (6th Cir. 1996) (failure to warn of lead paint in

2   military housing); Maas v. United States, 94 F.3d 291 (7th Cir. 1996) (failure to

3   warn of dangers involved in collecting nuclear weapons fragments after Air Force

4   plane crashed); Lockett v. United States, 938 F.2d 630 (6th Cir. 1991) (failure to

5   warn residents of discovery of PCB's in area); Sea-Land Service, Inc. v. United

6   States, 919 F.2d 888 (3d Cir. 1990) (failure to warn that ships contained asbestos);

7   Lively v. United States, 870 F.2d 296 (5th Cir. 1989) (failure to place warnings on

8   bags of stockpiled asbestos); In re Joint Eastern and Southern Districts Asbestos

9   Litigation, 891 F.2d 31(2d Cir. 1989) (failure to warn of asbestos on merchant

10  ships); In re Agent Orange, 818 F.2d 194 (2d Cir. 1987)(failure to warn of the

11  Agent Orange health hazards); Allen v. United States, 816 F.2d 1417 (10 Cir.

12  1987)(failure to warn public of dangers associated with open-air atomic bomb tests

13  in Nevada); Barnson v. United States, 816 F.2d 549(10 Cir. 1987)(decision not to

14  warn uranium miners of dangers associated with radiation exposure); Merklin v.

15  United States, 788 F2d. 172 (3rd Cir. 1986)(failure to warn workers of health

16  hazards discovered during inspections); Cisco v. United States, 768 F.2d 788 (7th

17  Cir. 1985)(failure to warn residents that dirt contaminated with dioxin had been

18  used as residential landfill).

19       There are no statutes, regulations or BOP program statements that require a

20  warning to be issued to inmates about the possibility of Cocci infection.  Pelton

21  Dec. ¶18.  In considering whether to warn, BOP balanced broad policy

22  considerations, including but not limited to, reliance to on CDC, security concerns

23  for both inmate and staff, orderly running of the prison and effectiveness of any

24  such warning.  Id.  No federal regulatory agency has issued a restriction on living

25  or working through Kern County or any other area within the United States where

26  Cocci is endemic. Id. ¶16.  While the BOP did not warn the inmates, the BOP did

27  act in the interests of the inmates by initiating an investigation with CDC and local

28  health departments. Id. ¶8.  As a result of this investigation, in late September

2004, in the exercise of judgment, the BOP began transferring high risk inmates from TCI Taft and excluding high risk inmates from designation to or transfer to TCI Taft.  Such high risk inmates were persons who were on chemotherapy, those currently on immunosuppressant medications, and inmates who were HIV positive. Pelton Dec. ¶13.  Inmates were not transferred or excluded based upon race alone, as it is contrary to BOP policy to make a transfer decision or a decision to designate an inmate to a specific facility based upon the inmate's race.  Pelton Dec. ¶14.  The BOP was also aware that the health providers at TCI Taft were maintaining and continue to maintain a high index of suspicion  to Cocci and testing and treating inmates who presented with any of the symptoms of the disease.  Id.¶18.

Cocci is naturally endemic to the soil in Taft, California and all of Kern County, as well as among other parts of the United States.  Cocci has been in the soil for thousands of years and there is no way to eradicate it from the soil.  TCI Taft campus includes several buildings and outdoor recreation.  There are cement walkways between the buildings and other areas of the campus are surfaced with grass, gravel, shrubs and sand.  Even if all ground at TCI Taft were paved with concrete, the infection would not be eliminated.  The infection is airborne and can travel great distances.  All of Kern County is not paved, and yet people live and work in Kern County with the vast majority of persons being uninfected.  The BOP's choices in this matter evidence broad policy considerations and are surely protected by the discretionary function exception to the FTCA.

Plaintiff's last claim is that the BOP failed to prevent inmate exposure to Cocci.  The exposure of inmates to Cocci is completely intertwined with the discretionary decision to place Panah at TCI Taft, discussed above.  Moreover, the decision to open or locate a prison on a specific site or to close a penal institution is also shielded by the discretionary function exception.

Deciding where to locate a public building is a decision protected by the

discretionary function exception.  See <u>American Exchange Bank of Madison v.</u>
<u>United States</u> 257 F.2d 938 (7th Cir. 1958)("Undoubtedly there was an exercise of
discretion in deciding wether and where a post office building should be located.");
<u>Valet v. United States</u>, 2006 WL 624897 (E.D.N.Y. 2006)(location of post office
and hours of operation are discretionary functions); <u>Sisley v. United States</u>, 202 F.
Supp. 273 (D.C. Alaska 1962)(the acts of constructing a highway and deciding
where it should be built are discretionary functions).

   The BOP has broad discretion in making such decisions.  There are no
mandatory statutes, regulations or BOP program statements that compel the BOP
to locate a prison on a specific site or to close a prison.  Cohn Dec. ¶4, 6.
Decisions about locating a federal correctional institution involve broad policy
considerations, balancing protection of the public, inmate population growth needs
and secure facility requirements with available resources, including land,
manpower, budgetary and otherwise.  Cohn Dec. ¶5.  In selecting a site for a
prison, the BOP exercises judgment in light of its mission, i.e., to protect society
by confining offenders in the controlled environments of prisons.  BOP balances
numerous factors when choosing to locate and/or construct a new correctional
institution.  <u>Id.</u>  These factors include but are not limited to: a) locations in an area
of the country where the BOP is experiencing current overcrowding or a region
where projections indicate large numbers of federal offenders entering the BOP in
the future; b) the availability of land at low or no cost to the government; c)
adequate available public services; and d) community support.  <u>Id.</u>  Similarly, in
choosing to close a federal prison, the BOP exercises it judgment, balancing broad
policy considerations, security, and inmate needs for the facility with available
resources, including land, staffing, budgetary and otherwise. Id. ¶7.  BOP
considers numerous factors when choosing to close a federal correctional
institution including but not limited to a) the cost or rising costs of operating a
facility; b) the current prison population and projections for future offenders

1    entering the system; c) loss or change in available facilities in area; d) cost and

2    availability of staffing and other manpower needs.  Id.

3         As demonstrated herein, the security decisions of the BOP are committed to

4    the discretion, choice and judgment of the BOP.  Such decisions are not controlled

5    by any mandatory statutes, regulations or BOP program statements.  The conduct

6    at issue involved judgments and choices made by government employees, choices

7    steeped in and susceptible to policy considerations.  The discretionary function

8    exception is satisfied here.  Accordingly, this Court lacks jurisdiction and the

9    Complaint should be dismissed and judgment entered for the United States.

10        B.    THE UNITED STATES MAY NOT BE HELD LIABLE

11              UNDER THE FTCA FOR CONTRACTOR TORTS

12        To the extent that plaintiff's claims may be interpreted as alleging medical

13   malpractice by the health care providers at TCI Taft, defendant United States may

14   not be held liable for wrongful acts of its contractors.  TCI Taft is a government-

15   owned, contractor operated facility.  See Declaration of Douglas Martz ("Martz

16   Dec."), ¶3.  None of the health care providers employed during the years that

17   Panah was incarcerated at Taft, (i.e., April 2005 through May 2006) were

18   government employees.  Id., ¶8.  At that time, TCI Taft was operated by the GEO

19   Group.  Id., at ¶¶4, 8, 9, 10.  Even the warden and all guards were GEO employees.

20   Id., at ¶9.  No liability may be imposed on the defendant for the negligent acts or

21   omissions of contractor employees.

22        The FTCA grants jurisdiction to the district courts over suits against the

23   United States "for injury or loss of property, or personal injury or death caused by

24   the negligent or wrongful act or omission of any employee of the Government." 28

25   U.S.C. §1346(b).  Liability may not be imposed on the United States for injuries

26   caused by the alleged negligence of its contractors or contractor employees.  28

27   U.S.C. § 1346(b);  Logue v. United States, 412 U.S. 521, 528 (1973); United States

28   v. Orleans, 425 U.S. 807, 815 (1976).

1    "'Employee of the government' includes officers or employees of any

2    federal agency . . . " 28 U.S.C. §2671. "Federal agency," in turn, "includes the

3    executive departments, the military departments, independent establishments of the

4    United States, and corporations primarily acting as instrumentalities or agencies of

5    the United States, but does not include any contractor with the United States." Id.

6    (emphases added). Courts have interpreted these definitions as paralleling the

7    common law doctrine of respondeat superior, to shield the United States from tort

8    liability for the negligence of persons who are not its "servants." Brucker v. United

9    States, 338 F.2d 427, 428 n.2 (9th Cir. 1964); Kirk v. United States, 270 F.2d 110,

10   116-17 (9th Cir. 1959).  "[U]nder the FTCA, federal liability is narrowly based on

11   traditional agency principles and does not necessarily lie when the tortfeasor

12   simply works for an entity . . . which performs important activities for the

13   government." Lewis v. United States, 680 F.2d 1239, 1242 (9th Cir. 1982)

14   (Federal Reserve Bank employee held not to be an employee of the United States

15   for FTCA purposes).

16       The Supreme Court has long held that, absent evidence that the United

17   States or its employees exercised "the power . . . to control the detailed physical

18   performance" of the "day-to-day operations" of the contractor, i.e., GEO, plaintiff

19   has not stated a claim within the FTCA's limited grant of jurisdiction. See Logue

20   v. United States, 412 U.S. 521, 528 (1973); United States v. Orleans, 425 U.S. 807,

21   815 (1976).  In Logue, the parents of a federal prisoner brought a wrongful death

22   action arising out of the suicide of their son who was being confined in a county

23   jail.  In holding that the county facility was not a "federal agency" and its

24   employees were not "employees of [a] federal agency" within the meaning of 28

25   U.S.C. §2671, the Court stated:

26          Congress not only authorized the Government to make contracts such

27          as the one here in question but rather clearly contemplated that the

28          day-to-day operations of the contractor's facilities were to be in the

hands of the contractor with the Government's role being limited to
the payment of sufficiently high rates to induce the contractor to do a
good job.  The contract entered into between the Government and the
Nuences County jail reflects a similar division of responsibility.  The
county undertakes to provide custody in accordance with the Bureau
of Prisons "rules and regulations governing the care and custody of
persons committed" under the contract.  These rules in turn specify
standards of treatment for federal prisoners, including the methods of
discipline, rules for communicating with attorneys, visitation
privileges mail, medical services and employment.  But the agreement
gives the United States no authority to physically supervise the
conduct of the jail's employees....

Logue, 412 U.S. 529-530.

Similarly in Orleans, a case arising out of a recreational injury to a child who
was in the care of a community action agency funded by the federal government,
the Supreme Court reiterated that the determinative question was "not whether the
community action agency receives federal money or must comply with federal
standards and regulations...." Orleans, 425 U.S. at 815.

Thus, pervasive control is the "critical element" of any claim attributing
negligence to a person characterized as an "employee" of the United States. Lewis
v. United States, supra; Letnes v. United States, 820 F.2d 1517 (9th Cir. 1987).
"[C]ontractual restrictions . . . designed to secure federal objectives . . . despite
their restrictive effect on the activities of the contracting party, do not convert an
independent entrepreneur into an 'agent' of the federal government." Letnes v.
United States, 820 F.2d at 1519 (citation omitted); Merklin v. United States, 788
F.2d 172, 175 n.3 (3d Cir. 1986); accord, Lewis, supra; Kirk v. United States, 270
F.2d 110 (9th Cir. 1959).

In Letnes, plaintiff's decedent was the copilot of a firefighting plane which

1   was flown under contract with the United States Forest Service.  The Forest

2   Service told the planes' crews when and where to fly, and where to drop

3   firefighting materials.  Decedent's plane crashed on its return from a Forest Service

4   mission, and plaintiff sued the United States on the basis of the pilot's alleged

5   negligence.  Reversing the trial court's award of damages, the Ninth Circuit refused

6   to hold the United States liable within the terms of the FTCA, finding that use of

7   the pilot's services for particular flights did not amount to control of how pilots

8   flew their aircraft.  The court concluded that the pilots were not "employees" for

9   purposes of the FTCA. The appeals court remanded the case with instructions to

10   dismiss for lack of jurisdiction.  820 F.2d at 1519.

11          Actions which manifest the United States' concern for contract performance,

12   whether they are expressed as explicit contractual provisions or by other acts, do

13   not equal the control over the day-to-day operations of a contractor which would

14   place the United States in the role of a de facto employer.  See e.g., Bramer v.

15   United States, 412 F. Supp. 569 (C.D. Cal. 1976), aff'd on other grounds, 595 F.2d

16   1141 (9th Cir. 1979) (Liability for injuries resulting from radiation leak at a federal

17   contractor site may not be imputed to the United States).

18          In the case at bar, the BOP contracted with the GEO Group for the operation

19   of TCI Taft.  Martz Dec., ¶¶4, 5, 6.  The BOP had no authority to hire or fire GEO

20   employees.  Id.  The BOP evaluated the ultimate performance of the contract by

21   GEO, however, BOP was not involved in the day-to-day operations of GEO nor

22   did BOP supervise GEO employees in their day-to-day activities in furtherance of

23   the contract.  Id.

24   / / /

25   / / /

26   / / /

27          Therefore, as a matter of law, neither GEO nor its employees were agencies

28   or employees of agencies of the United States.  Accordingly, plaintiffs' claims for

1  injuries against the United States arising from alleged wrongful acts of GEO

2  employees must be dismissed.

3                                          IV

4                                   <u>CONCLUSION</u>

5        For the reasons stated herein, the defendant's motion to dismiss or in the

6  alternative, for summary judgment should be granted.

7  Dated: June 20, 2011                    Respectfully submitted,
                                           ANDRE BIROTTE JR.
8                                          United States Attorney
                                           LEON W. WEIDMAN
9                                          Assistant United States Attorney
                                           Chief, Civil Division
10
                                           /S/   Joanne S. Osinoff
11                                         _____
12                                         JOANNE S. OSINOFF
                                           Assistant United States Attorney
13                                         Attorneys for Defendant
                                           United States of America
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JOANNE S. OSINOFF

I, JOANNE S. OSINOFF, hereby declare and state:

1.     I am employed as an Assistant United States Attorney for the Central District of California.  I am assigned primary responsibility for the defense of the instant action.  I have personal knowledge of the following facts.

2.     I conducted the first day of the deposition of the plaintiff, Arjang Panah, at the offices of Feldman and Wallach on May 17, 2011.

3.     Attached to this Declaration are true and correct copies of excerpts of the deposition of Arjang Panah.  The excerpts are referenced in the defendant's Motion to Dismiss or in the Alternative, for Summary Judgment by page and line.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 16, 2011 at Los Angeles, California.

/S/ Joanne S. Osinoff

_____

JOANNE S. OSINOFF