## DECLARATION OF DOUGLAS M. MARTZ

I, DOUGLAS M. MARTZ, hereby declare and state:

1. I am Chief of the Privatized Corrections Contracting Section, of the Acquisitions Branch, Administration Division of the Federal Bureau of Prisons (BOP), United States Department of Justice (DOJ). I have held this position since August 2007. I have been employed by the Federal Bureau of Prisons since July 1989. The Acquisition Branch provides goods and services to, and in furtherance of, the overall mission of the Bureau of Prisons, i.e., to protect society by confining offenders in the controlled environments of prisons, acquiring such goods and services in a timely manner, and at the best value to the Government. The Privatized Corrections Contracting (PCC) Section is responsible for establishing contracts with providers to manage and operate private prison facilities. As the Section Chief, I have oversight responsibility for staff and operations of PCC.

2. I make this declaration from my own personal knowledge and from my review of official records of the BOP.

3. Taft Correctional Institution (TCI Taft) is a federal prison located in Taft, California. In September, 1996, as part of the Fiscal Year ("FY) 1997 Appropriations Act of the Department of Justice, Congress directed that TCI Taft be privatized. TCI Taft is a government-owned, contractor-operated facility.

4. In July 1997, the BOP awarded the contract for the management of the TCI Taft to Wackenhut Corrections Corporation. Wackenhut Corrections Corporation changed its corporate name to The GEO Group, Inc., (GEO) in 2003. The original contract term for the operation of the TCI Taft was for 10 years, encompassing a 3 year base period and 7 one-year options. During the time period of April 1, 2005, to May 15, 2006, TCI Taft was operated by GEO.

5. The contract between the BOP and GEO for the operation of TCI Taft was a performance-based contract. Performance goals were identified in the contract. GEO, however, determined the day-to-day procedures and practices that would achieve the performance goals.

6. BOP did not hire individual GEO employees. Nor did the BOP have the authority to fire individual employees of GEO. The BOP did not pay GEO employees directly. Contract sums were paid to GEO for operational expenses including employee salaries.

7. BOP evaluated the ultimate performance of the contract by GEO, however, BOP was not involved in the day-to-day operations at TCI Taft nor did BOP physically supervise individual GEO employees in their day-to-day activities at TCT Taft.

8. The contract required that GEO operate, staff and maintain a Health

2

Unit at TCI Taft to provide medical care and treatment, as needed, to inmates during their terms of incarceration. All physicians and all other health care providers working in the Health Unit at TCI Taft during the term of the contract, including the years 2005-2006, were GEO employees.

9. Similarly, the Warden and all correctional officers at TCI Taft were GEO employees during the term of the contract, including 2005-2006.

10. The contract also required that GEO meet the requirements of the accreditation standards established by the American Correctional Association (ACA) as well as the requirements of accreditation standards of the Joint Commission on Accreditation of Healthcare Organizations (JCAHO). In addition, BOP imposed requirements on the contractor that key record keeping tasks, such as inmate sentence computation, and inmate central files, be performed according to BOP program statements using BOP-developed software. These latter requirements were imposed to ease the record keeping tasks associated with moving inmates throughout the BOP system whether the receiving prison is/was public or contractor-operated. Other than these record keeping requirements, GEO was responsible for the day-to-day operations at TCI Taft.

11. The designation of an individual to a specific prison is a BOP judgment decision. GEO did not determine who would be sent to TCI Taft; nor did

3

GEO decide who would be transferred from TCI Taft. GEO could request an inmate transfer, but that decision remained with the BOP.

12. There are no statutes, regulations or BOP program statements which mandate the designation of an individual prisoner to a specific prison.

13. The decision to designate an individual prisoner to a specific correctional institution is a BOP judgment involving policy considerations including inmate safety, prison security and effective use of prison resources, budgetary, staffing and otherwise. Additionally, the BOP balances factors including but are not limited to, the history and characteristics of the prisoner, the nature and circumstances of the offense, and the resources of the contemplated facility.

I declare that the foregoing is true and correct.

Executed this 20th day of June, 2011
in Aurora, Colorado.

_____
DOUGLAS M. MARTZ
Chief,
Privatized Corrections Contracting,
Acquisitions Branch,
Administration Division
Federal Bureau of Prisons