1    Ian Wallach, (State Bar No. 237849)
     Jason K. Feldman (State Bar No. 213386)
2    FELDMAN & WALLACH
     606 Venice Blvd., Suite C
3    Venice, CA 90291
     Telephone: (310) 577-2001
4    Fax: (310) 564-2004
     ian@feldmanwallach.com
5    jason@feldmanwallach.com

6

7    Attorneys for Plaintiff Arjang Panah

8            **UNITED STATES DISTRICT COURT**

9      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10             **WESTERN DIVISION**

11

| | |
|---|---|
| **ARJANG PANAH;** | **CASE NO. CV-09-6535 GAF (PLAx)** |
|        **Plaintiff,** | |
| **V.** | **PLAINTIFF ARJANG PANAH'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT** |
| **UNITED STATES OF AMERICA** | |
|        **Defendants.** | |
| | **[SEPARATE STATEMENT OF GENUINE ISSUES IN DISPUTE; DECLARATIONS OF IAN WALLACH; DR. HANS EINSTEIN; ARJANG PANAH; JASON K. FELDMAN; (PROPOSED) ORDER FILED CONCURRENTLY]** |
| | **Date:**     **August 22, 2011**<br>**Time:**    **9:30 a.m.**<br>**Place:**   **Roybal Courthouse**<br>         **255 East Temple Street**<br>         **Los Angeles, CA 90012** |
| | **The Courtroom of the Honorable Judge Gary A. Fees** |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES............................1

I. INTRODUCTION..............................................................1

II. COUNTER-STATEMENT OF FACTS...................................2

   A. AN EXPLANATION OF COCCIDIOIDOMYCOSIS......................2

   B. THE EPIDEMIC OF COCCI AT TAFT CI...............................3

   C. NOTICE OF THE DANGEROUS CONDITION..........................4

   D. THE DECISIONS TO TRANSFER PLAINTIFF TO TAFT CI IN 2005
      AND HIS RESULTING ILLNESS.......................................5

III. ARGUMENT..................................................................8

   A. THIS COURT HAS SUBJECT MATTER JURISDICTION................8

     i.    Standard Of Review...............................................8

   B. THE *GAUBERT/BERKOVITZ* TEST....................................10

   C. DEFENDANT CAN NOT MEET ITS BURDEN TO SATISFY BOTH
      PRONGS OF THE *GAUBERT/BERKOVITZ* TEST......................9

     i.    Matters of Scientific and Professional Judgment -- Particularly
         Judgments Concerning Safety -- Are Rarely Considered To Be
         Susceptible To Social, Economic, Or Political Policy Analysis........10

     ii.   Claims Of "Failure To Warn" Of Known Risks Do Not Reflect
         Economic, Social, And Political Concerns That The Discretionary
         Function Exception Was Designed To Protect..........................12

     iii.  *Whisnant* And *Green* Accurately Reflect Controlling Decisions
         Regarding Safety And Failures To Warn................................15

     iv.  The Policy Considerations Raised By Defendant Do Not Invoke The
         Discretionary Function Exception.....................................18

     v.   Defendant's Foreign Cases Are Distinguishable.......................20

i

D. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD

BE DENIED..........…...…...…....................................…...............20

IV. CONCLUSION..........…..............................…...........................22

# TABLE OF AUTHORITIES

## CASES

Page

*Whisnant v. U.S.A.,*
   400 F. 3d 1177 (9th Cir. 2005)...............................8,9,10,11,12,19,20,21

*Green v. United States,*
   630 F. 3d 1245 (9th Cir. 2011)......................................8,9,12,13,14,20

*Corrie v. Caterpillar, Inc.,*
   503 F.3d 974 (9th Cir. 2007)..............................................................8

*Miller v. United States,*
   163 F.3d 591 (9th Cir. 1998)...........................................................8,9

*Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior,*
   241 F.3d 1208 (9th Cir. 2001)..............................................8,11,17,18,19

*O'Toole v. United States,*
   295 F.3d 1029 (9th Cir. 2002)......................................................9,15,19

*Kielwien v. United States,*
   540 F.2d 676, 681 (4th Cir. 1976).......................................................9

*United States v. Gaubert,*
   499 U.S. 315 (U.S. 1991).................................................................9

*Berkovitz v. United States,*
   486 U.S. 531 (1988)......................................................................9

*Giraldo v. California Dept. of Corrections and Rehabilitation,*
   168 Cal. App. 4th 231 (2009)...............................................12,14,15,19

*Faber v. U.S.A.,*
   56 F.3d 1122 (9th Cir. 1995)............................................................15

*Arizona Maint. Co. v. U.S.A.,*
   864 F.2d 1497 (9th Cir. 1989)..........................................................16

iii

1   *ARA Leisure Services, et al. v. U.S.A.,*

2      831 F.2d 193 (9th Cir. 1987) ……………………………..………16,17,19,20

3   *Aslakson v. United States,*

4      790 F.2d 688 (8th Cir. 1986)…………………………………...…………17

5   *Kennewick Irrigation Dist. v. United States,*

6      880 F.2d 1018 (9th Cir. 1989)………………………….………….………17

7   *Camozzi v. Roland/Miller and Hope Consulting Group,*

8      866 F.2d 287 (9th Cir. 1989)……………………………………...………17

9   *McCall v. United States Dep't of Energy,*

10      914 F.2d 191 (9th Cir. 1990)……………...……………………….17

11   *McGarry v. United States,*

12      549 F.2d 587 (9th Cir. 1976)………………..…………………………..…17

13   *Routh v. United States,*

14      941 F.2d 853 (9th Cir. 1991)……...…..…………..……………..…………17

15   *Seyler v. United States,*

16      832 F.2d 120 (9th Cir. 1987)……...…………………...……...……...17,18

17   *Summers v. U.S.A.,*

18      905 F.2d 1212 (9th Cir. 1990)………………..…………..……..………18

19   *Sutton v. Earles,*

20      26 F.3d 903 (9th Cir. 1994)…………..…………………..…..…..………18

21   *Cohen v. U.S.A.,*

22      151 F.3d 1338 (11th Cir. 1998)…………………………...…………20

23   *Caudle v. U.S.,*

24      72 F.3d 132 (7th Cir. 1995)……………………………...…...……..20

25   *Dykstra v. U.S. BOP,*

26      140 F.3d 791 (8th Cir. 1998)………………………………….....…..20

27

28

1

## STATUTES

2                                                                    Page

3   Federal Rule of Civil Procedure, 12(b)(1)…………………….......….……..8

4   28 U.S.C. § 2674……………………….….……………………….……..9

5   28 U.S.C. § 1346(b)(1)…………………………………………………....9

6   28 U.S.C. § 2680(a)………………………………………….……....…...9

7   18 U.S.C. § 4042……………………………….………..……..….....…10

8   A.R.S. § 13-1706(a)…………………….………….……..…….…..…14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2      I.  <u>INTRODUCTION</u>

3    Between 2003 and 2006, an outbreak of Coccidioidomycosis

4 (commonly known as "Valley Fever", "San Joaquin Valley Fever" or

5 "cocci") occurred at the Taft Correctional Institution ("Taft CI").  Compared

6 to previous years, occurrences rose in excess of 200% - 700%. The Bureau

7 of Prisons ("the BOP") issued safety precautions to staff, but not inmates,

8 and was aware that a small percentage of inmates transferred into Taft CI

9 would acquire "disseminated cocci" (cocci's potentially-fatal form requiring

10 life-long monitoring and care).  Despite knowledge of this danger, Defendant

11 United States of America ("Defendant") transferred Plaintiff Arjang Panah

12 ("Plaintiff") to Taft CI in 2005.  Plaintiff then acquired disseminated cocci.

13 Plaintiff brings this action seeking damages that include the cost of the

14 medical supervision he now requires as a result.

15    Defendant's Notice of Motion and Motion to Dismiss or in the

16 Alternative, for Summary Judgment ("Defendant's Motion") should be

17 denied for several reasons.  First, Defendant brings a motion to dismiss on

18 the grounds that the Court lacks jurisdiction over the subject matter of

19 Plaintiff's Complaint by virtue of the Discretionary Function exception to

20 the Federal Tort Claim Act ("the FTCA").  However, the Ninth Circuit has

21 consistently held that, as here, matters of safety and failures to warn are not

22 susceptible to the type of policy analysis that Discretionary Function

23 exception was designed to protect.

24    Second, Defendant seeks summary judgment on the grounds that

25 Plaintiff cannot recover for medical malpractice.  However, Defendant

26 mischaracterizes Plaintiff's Complaint as seeking relief for medical

27 malpractice when, in fact, Plaintiff's Complaint seeks relief for negligently

28

1

1  subjecting Plaintiff to cocci when it decided to transfer Plaintiff to Taft CI,

2  and then did so, without warning him of the risks associated with cocci or of

3  preventative measures.  Any medical negligence Plaintiff can establish at

4  trial merely contributes to consequential damages as a proximate result of

5  Defendant's conduct.

6       Third, Defendant improperly attempts to hide behind the conduct of

7  purported independent contractors who operated the prison.  But the conduct

8  of those contractors is irrelevant to Plaintiff's claim -- Plaintiff is seeking

9  redress for the direct actions of Defendant in negligently deciding to transfer

10  him to Taft CI during an outbreak of cocci, and did so, with knowledge of

11  that danger, failing to keep Plaintiff safe, and failing to warn Plaintiff of the

12  danger of cocci at Taft CI or preventative measures.

13       Lastly, Defendant fails to address the multitude of genuine issues of

14  material fact relating to Plaintiff's claims of negligence.

15       Accordingly, Defendant's Motion should be denied.

16           II.    COUNTER-STATEMENT OF FACTS

17           A.   AN EXPLANATION OF COCCIDIOIDOMYCOSIS

18       Cocci has long been known as a serious infectious disease acquired by

19  the inhalation of an airborne fungus, Coccidioides Immitis, endemic in the

20  soil of various areas of the Southwest.  Declaration of Ian Wallach

21  ("Wallach Dec."), ¶ 3, Exh. B, at p. 1.  It is most prevalent in Kern County,

22  in the San Joaquin Valley of California.  Wallach Dec., ¶ 4, Exh. C, at p. 1.

23  "While 60% of those infected do not have any symptoms the remainder have

24  flu-like symptoms including fever and cough that typically resolve

25  spontaneously in several weeks.  Less than 1% of those infected will develop

26  disseminated disease."  Wallach Dec., ¶ 3, Exh. B, at p.1.

27

28

1    No vaccine or cure for cocci exists.  The majority of those who

2    contract cocci are asymptomatic and their infections resolve without therapy.

3    Less than 5% of cocci infections disseminate and cause miliary disease, bone

4    and joint infections (including osteomyelitis), skin disease, soft tissue

5    abscesses, and meningitis.  Disseminated cocci is progressive, painful,

6    debilitating and uniformly fatal once it progresses to meningitis if left

7    untreated.  Declaration of Hans Einstein ("Einstein Dec.") ¶¶ 9, 10.  Lifelong

8    monitoring and supervision is recommended for those who experienced

9    disseminated cocci.  Id.

10    Individuals of certain races may be at higher risk for developing

11    disseminated cocci, particularly African-Americans and Filipinos.  Wallach

12    Dec., ¶ 5 Exh. D, at p. 2.  However, Newton Kendig, M.D., Chief Medical

13    Officer for the BOP, attributed this to a lack of a host immunity shared by

14    local residents.  Wallach Dec., ¶ 6, Exh. E.

15                          B.    THE EPIDEMIC OF COCCI AT TAFT CI

16    "An epidemic of coccidioidomycosis at Taft Correctional Institution

17    was recognized in 2003 . . ."  Wallach Dec., ¶ 7, Exh. F, at p. 2.  During that

18    period, Taft CI and its surrounding area "experienced an increased number

19    of individuals testing positive for Valley Fever . . ."  Wallach Dec., ¶ 4, Exh.

20    C, at p. 2.  One study claims occurrences of cocci doubled at Taft CI during

21    that period.  Id.  Others suggest the occurrences multiplied by over 700%.

22    Wallach Dec., ¶ 3, Exh. B, at, p.12.  "According to the warden at Taft, there

23    [were] more cases of diagnosed Valley Fever [at Taft CI] than in all other

24    federal prisons combined" (tripling the cost of insurance for that facility).

25    Wallach Dec., ¶ 8, Exh. G, at pp. 56, 109.

26    The BOP warned its employees of risks associated with cocci and

27    advised them of preventative measures, but did not do so for inmates.  In

28

1   January 2004, the BOP issued a system-wide "Risk Management Alert" for
2   all BOP Health Services Staff stating, "Valley Fever is another name for the
3   sometimes deadly infection coccidioidomycosis", recommending, "[p]ersons
4   at risk for valley fever should avoid exposure to dust and dry soil in areas
5   where valley fever is common."  Wallach Dec., ¶ 9, Exh. H, at p. 6.

6        Several inmates at Taft CI fell ill to disseminated cocci (and at least
7   one died, in 2007).  Wallach Dec., ¶ 10, Exh. I.  Plaintiff was told by other
8   inmates and Taft CI staff that at least four inmates had died from cocci at
9   Taft CI.  Declaration of Arjang Panah ("Panah Dec.") at ¶ 2.

10       In September, 2004, the BOP began to transfer inmates it deemed "at-
11  risk" for cocci to other BOP facilities, making room for inmates, such as
12  Plaintiff, to be transferred into Taft CI by the BOP if they so chose.  Wallach
13  Dec., ¶ 5, Exh. D at p. 2; Id. ¶ 12, Exh. K; Id. ¶ 13, Exh. L.

14       Preventative measures were available. Wallach Dec., ¶ 14, Exh. M, at
15  p. 8.  But not employed.  Outdoor areas that were not cemented and not
16  covered in grass, gravel, shrubs, and sand, contained the same dust-laden
17  land that surrounds the facility (as did the running track) and the staircase
18  that Plaintiff was obligated to descend daily fully exposed him to the
19  surrounding dust.  Panah Dec., ¶ 3, Exh. A.

20               C.   NOTICE OF THE DANGEROUS CONDITION

21       Defendant was on notice of the dangerous condition at Taft CI when it
22  decided to transfer Plaintiff there, and then did so.  In September 2004,
23  Newton Kendig, M.D., BOP, sent an E-mail to several staff members
24  discussing the need to liberalize the criteria to transfer inmates away from
25  the growing risk of cocci at Taft CI.  Wallach Dec., ¶ 13, Exh. L.  In October
26  2004, Scott Fridkin, M.D, of the CDC, sent an email to Newton Kendig,
27  M.D., BOP, discussing the rise in cocci at Taft CI and outlining a potential

28

study.  Wallach Dec., ¶ 15, Exh. N.[1]  Numerous correspondences were
exchanged between BOP and other agency personnel (including employees
of the Center for Disease Control ("CDC")) relating the outbreak of cocci at
Taft CI during that period. *See* Wallach Dec. ¶¶ 4-7, 9, 11-13 (and attached
exhibits).

### D.   THE DECISION TO TRANSFER PLAINTIFF TO TAFT CI IN 2005 AND HIS RESULTING ILLNESS

In May of 2004, Plaintiff entered a plea of guilty to distribution of a
controlled substance (Methamphetamine) and was sentenced by the U.S.
District Court to serve 72 months in federal prison.  Panah Dec., ¶ 4.
Plaintiff was born in Tehran, Iran, came to the United States as a teenager,
and was a resident of California until the time of his arrest.  Panah Dec., ¶ 5.
He became a naturalized United States citizen in 2000.  Panah Dec., ¶ 6.  He
did not travel to the San Joaquin Valley at any time prior to his assignment
to Taft CI.  Panah Dec. ¶ 7.  Upon entering federal custody, Plaintiff was in
reasonably good health.  Panah Dec., ¶ 8.

Plaintiff was assigned to several BOP institutions, including one in
Victorville, (prior to his transfer to Taft CI).  Panah Dec., ¶ 9.  The BOP
placed no health restrictions on Plaintiff during his incarceration in
Victorville.  Wallach Dec., ¶ 17, Exh. P, at p. 2.

Prior to March 21, 2005, Defendant decided to transfer Plaintiff to
Taft CI, and did so.  Panah Dec., ¶ 10.

---

[1] On or about 2009, a study emerged, authored by many of the
individuals named above.  Wallach Dec., ¶ 16, Exh. O.  The authors
conclude that "immunologically naïve prisoners incarcerated in areas that are
endemic for coccidiodomycosis are a population susceptible for infection . .
.", and that "[o]nce a vaccine for coccidiodomycosis is available, persons
incarcerated in endemic areas may represent a segment of the population that
would benefit from vaccination." Id. at 6.

Taft CI is a Government-owned prison, operated at all times pertinent by a privately-owned Government contractor, The Geo Group, Inc. ("Geo") (*See* Defendant's Motion at p. 16). Defendant provided oversight to Geo at all times pertinent to this action. Panah Dec., ¶ 11, Exh. B ("Staff of the [BOP's] Correctional Programs Division in [the BOP's] Central Office provide oversight for the privately-operated facilities [such as Taft, CI]"); (*see also* Defendant's Motion at p. 5)

Defendant failed to take any measures to protect Taft CI inmates from activities exposing them to cocci, and also failed to direct Geo to do so. Panah Dec., ¶¶ 12, 13. Plaintiff was never told to avoid exposure to dust and dry soil, or provided any special protective breathing masks or other devices. There was no special air conditioning equipment employed at Taft CI to filter out the dust. Panah Dec., ¶¶ 14, 15, 16. There was no prohibition of outdoor activities during excessively-dusty conditions. Panah Dec., ¶ 17. Plaintiff was not educated as to cocci, the risks associated with disseminated cocci, or steps one could take to avoid acquiring cocci. Panah Dec., ¶ 18. To eat, go to the library, go to the health clinic, or work, Plaintiff had to leave his second-floor dormitory, proceed outside, walk down an open-air staircase and cross the open-air compound. Panah Dec., ¶ 19.

On April 1, 2005, shortly after Plaintiff's arrival at Taft CI, he was evaluated by the Health Services Department of Geo and found to be in good health and free of any restrictions. Wallach Dec., ¶ 18, Exh. Q.

Plaintiff subsequently acquired cocci. He initially experienced high fevers (102.2 to 103.2 degrees), extreme pain, lesions, and excessive night chills and sweats. Panah Dec., ¶¶ 20, 21. Plaintiff's initial test for cocci test was negative, but later tests confirmed its presence and a high likelihood for dissemination. Wallach Dec., ¶¶ 19 - 26, Exhs. R - Y; Panah Dec., ¶ 20, 21;

Einstein Dec., ¶ 8.  Plaintiff developed a painful and enlarged testicle, medically referred to as a "Hydrocele", that can be a signal that cocci has disseminated.  Einstein Dec., ¶ 6; Wallach Dec., ¶ 24, Exh. W.  No additional investigation as to the cause for the Hydrocele was undertaken (and if one had been, Plaintiff might have been spared his recurrences of disseminated cocci).  Id.  On January 20, 2006, a cocci test was ordered again.  Wallach Dec., ¶ 25, Exh. X, at p. 1.  Plaintiff's Titer Score was 1:512.  Wallach Dec., ¶ 26, Exh. Y (*explained* at Einstein Dec., ¶ 8).  Plaintiff was only prescribed 400mg per day of Fluconazole, but at that time it was common in the medical community to prescribe 800mg per day. Einstein Dec., ¶ 5.  An accurate initial diagnosis and more aggressive initial treatment could have spared Plaintiff from the condition he subsequently experienced and the life-long monitoring he is now required to undergo.  Id.

Around June of 2006, Plaintiff was transferred to a Federal Correction Facility in La Tuna, Texas.  Plaintiff was then subject to a series of restrictions limiting his physical activities and illustrating his condition.  Wallach Dec., ¶ 27, Exh. Z.

Plaintiff used his leisure time at Taft CI to obtain a Masters Degree and, ultimately, a Ph.D. in International Business Administration.  Panah Dec., ¶ 25.  Plaintiff's education allowed him to gain his current employment as an account executive.  Fortunately, his employer provides health insurance.  Id.  Insurance is necessary for Plaintiff, as a hospitalization for a flare-up of Valley Fever can cost close to $800,000.  Wallach Dec., ¶ 28, Exh. AA, at p.4.

Following his release from Federal Custody, he was hospitalized on one occasion due to a severe flare-up of Valley Fever.  Panah Dec., ¶ 24. To this day, Plaintiff must undertake daily precautions to avoid any flare-ups of

his condition. His daily activities are also limited in that he cannot engage in any prolonged exercise and becomes winded early. Plaintiff still experiences an enlarged testicle due to his condition. Plaintiff must have his Titer Score checked every six months throughout his life or until a cure is discovered. Panah Dec., ¶ 26. Plaintiff is still very susceptible to any illness, since his immune system is compromised. Panah Dec., ¶ 27.

Plaintiff must now live every moment with the anxiety and dread of the potential that he may experience a recurrence of disseminated cocci, which could cause an agonizing course of progressive sickness and premature death. *See* Einstein Dec., ¶ 10. Plaintiff will need to maintain regular access to medical professionals familiar with the disease who can continue the careful monitoring necessary to keep his Valley Fever in check. Einstein Dec., ¶ 6.

## III.   ARGUMENT

### A.   THIS COURT HAS SUBJECT MATTER JURISDICTION

#### i. Standard of Review

"Where a defendant in its motion to dismiss under *Federal Rule of Civil Procedure* 12(b)(1) asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegation on which jurisdiction depends are not true as a matter of fact), we take the allegation in the plaintiff's complaint as true." *Whisnant v. U.S.A.*, 400 F.3d 1177, 1179 (9th Cir. 2005). "…[P]roof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion. *Green v. United States,* 630 F.3d 1245 (9th Cir. 2011), at 1248, Fn. 3 (*citing Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007)).

1      "…[T]he government bears the ultimate burden of establishing that

2  the [Discretionary Function] exception applies." *Green v. United States*, 630

3  F.3d 1245, 1248 - 49 (9th Cir. 2011) (*citing Miller v. United States*, 163 F.3d

4  591, 594 (9th Cir. 1998)); *see also Bear Medicine v. United States ex rel.*

5  *Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001).

6      It is the intent of Congress that the Government of the United States

7  be held accountable for injuries in the same manner a private individual

8  under like circumstances. 28 U.S.C. § 2674; 28 U.S.C. § 1346(b)(1). "In

9  order to effectuate Congress's intent to compensate individuals harmed by

10  government negligence, [the FTCA], as a remedial statute, should be

11  construed liberally, and its exceptions should be read narrowly."[2]  *O'Toole v.*

12  *United States*, 295 F.3d 1029, 1037 (9th Cir. 2002) (*citing Kielwien v.*

13  *United States*, 540 F.2d 676, 681 (4th Cir. 1976).

14      B.   THE *GAUBERT/BERKOVITZ* TEST

15      In *Whisnant*, 400 F.3d at 1180 – 81, the Ninth Circuit summarized the

16  test set forth in *United States v. Gaubert*, 499 U.S. 315, 322-323 (U.S. 1991)

17  (*incorporating Berkovitz v. United States*, 486 U.S. 531, 536 (1988))

18  (referred to herein as the "*Gaubert/Berkovitz* test"), stating that courts are to

19  ask first whether the challenged action was a discretionary one (*i.e.*, whether

20  it was governed by a mandatory statute, policy, or regulation). If the action

21  is mandated by law and not discretionary, it cannot be shielded under the

22  discretionary function exception; and second, whether the challenged action

23  is of the type Congress meant to protect -- *i.e.*, whether the action involves a

24  decision susceptible to social, economic, or political policy analysis. (*citing*

25  *O'Toole v. United States*, 295 F.3d 1029, 1033-34 (9th Cir. 2002)).

26

27     [2]  28 U.S.C. § 2680 (a) sets forth the Discretionary Function

28  Exception.

C.  DEFENDANT CAN NOT MEET ITS BURDEN TO SATISFY BOTH PRONGS OF THE *GAUBERT/BERKOVITZ* TEST

First, the BOP has a statutory obligation to provide a safe and habitable facility for individuals entrusted into its care. 18 U.S.C. § 4042 provides, in relevant part, that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise." Although little, if any, guidance is available as to what the above statutory mandate dictates as it relates to the first prong of the *Gaubert/Berkovitz* test, it is certain that Defendant cannot satisfy the second prong.

i.  Matters Of Scientific And Professional Judgment -- Particularly Judgments Concerning Safety -- Are Rarely Considered To Be Susceptible To Social, Economic, Or Political Policy Analysis

The Ninth Circuit has continually held that matters of scientific and professional judgment are not protected by the Discretionary Function exception. *See Whisnant*, 400 F.3d at 1180. In *Whisnant*, the plaintiff was required to regularly go to a commissary at a U.S. Navy Base. Id. Safety inspection reports revealed that mold had accumulated there, and several customers and employees became ill. Id. The plaintiff alleged that he contracted pneumonia as a result of his exposure to the mold. Id. The plaintiff sued under the FTCA, alleging that the government ignored indications of the dangerous condition and intentionally or recklessly permitted him to go to the commissary in spite of health hazards about which the government was or should have been aware. The government asserted

1  the Discretionary Function exception, and the district court agreed and

2  dismissed the case.

3       The Ninth Circuit Court of Appeals reversed.  The parties agreed that

4  the first prong of the *Gaubert/Berkovitz* test was satisfied.  Id. at 1181.  But

5  the Court ultimately held that the second prong was not.  The Court

6  explained the inherent challenge in "charting a clear path through the

7  weaving lines of precedent regarding what decisions are susceptible to

8  social, economic, or political policy analysis".  Id.  The Court noted that

9  actions that are "uniquely governmental" in nature are not automatically

10  covered by the exception.  Id.  The Court reiterated the Ninth Circuit's rule

11  that "the decision to adopt safety precautions may be based in policy

12  considerations, but the implementation of those precautions is not.  Safety

13  measures, once undertaken, cannot be shortchanged in the name of policy".

14  Id. at 1182 (*citing Bear Medicine*, 241 F.3d at 1215-17).  The Court stated

15  that "[c]leaning up mold involves professional and scientific judgment, not

16  decisions of social, economic, or political policy...." at 1183.  The Court also

17  stated that "because removing an obvious health hazard is a matter of safety

18  and not policy, the government's alleged failure to control the accumulation

19  of toxic mold in the Bangor commissary cannot be protected under the

20  discretionary function exception."  Id.

21       The issues raised by both Plaintiff and Defendant herein and the

22  parties in *Whisnant* are directly analogous.  Both plaintiffs alleged that the

23  defendant knew (or should have known) of a toxic environment, yet

24  negligently allowed the plaintiffs to enter that environment unprotected,

25  resulting in their respective illnesses.  In both actions, the defendant

26  asserted that the claims were barred by the Discretionary Function

27

28

1  exception. The *Whisnant* Court determined that subject matter jurisdiction

2  was present, and this matter should not be different.

3  Moreover, a greater duty was present here between Defendant, who

4  had complete custody and control over Plaintiff, and the parties in

5  *Whisnant*. California recognizes a "special relationship" imposing upon a

6  jailer an enhanced duty of care for an inmate -- *see Giraldo v. California*

7  *Dept. of Corrections and Rehabilitation*, 168 Cal. App. 4th 231 (2009)),

8  whereas no such special relationship was present in *Whisnant*.

9        ii.  Claims Of "Failure To Warn" Of Known Risks Do

10            Not Reflect Economic, Social, And Political Concerns

11            That The Discretionary Function Exception Was

12            Designed To Protect

13  The Ninth Circuit has repeatedly held that claims involving failures to

14  warn are not susceptible to the Discretionary Function exception.  In *Green*

15  *v. U.S.A.*, 630 F.3d 1245 (9th Cir. 2011), the Court addressed whether the

16  Discretionary Function exception protected the U.S. Forest Service's failure

17  to notify property owners that it intended to light a back-fire that exceeded

18  Forest Service boundaries and damaged their properties. Id. at 1247.

19  Specifically, the plaintiffs alleged that the Forest Service "failed to

20  communicate the risk [of the backfire] to other fire-fighters and the

21  [Appellants]" and that this failure to warn resulted in property damage, as it

22  deprived them of the capacity to take protective measures. *Green*, 630 F.3d

23  at 1248 at fn. 3. The defendant moved to dismiss asserting the Discretionary

24  Function exception and the district court granted the motion. Id. at 1248.

25  The Ninth Circuit reversed. The Court analyzed whether the

26  discretion at issue involved the type of public policy judgment that the

27  discretionary function exception was designed to shield. *Green*, 630 F.3d at

28

1251. Because the primary issue in *Green* involved the failure of the
defendant to warn the appellants of a known risk, the Court determined that
the claims were not barred by the Discretionary Function exception:

> If the Appellants had been notified of the proposed backfire,
> they might have been able to take measures to protect their
> properties, or at least ensured the Forest Service took measures
> to do so. For purposes of this appeal from a motion to dismiss,
> we find Appellants' pleadings adequately state such a possibility.
> Accordingly, and in light of the specific record in this case, we
> disagree with the district court's application of the discretionary
> function exception.

*Green*, 630 F.3d at 1252.

And even if a decision is discretionary, actions based on such
decisions are not necessarily shielded from liability under the discretionary
function exception. For example, in *Green*, Appellants did not challenge the
Forest Service's decision to light the backfire -- rather, the appellants
challenged "the Forest Service's actions surrounding that decision" (*i.e.*,
failure to notify Appellants of the backfire, failure to inform firefighters
about and protect their properties)." *Green*, 630 F.3d at 1250.  Agreeing,
the Ninth Circuit Court stated that "there is no evidence in the record to
support the Forest Service's contention that the nature of its actions in this
case -- *i.e.*, its decisions when and whether to communicate directly with
private citizens whose properties might have been in harm's way -- are
susceptible to policy analysis." Id. at 1252.

Similarly, in this matter, Plaintiff alleges that the BOP was aware of a
known risk -- an epidemic outbreak of cocci at Taft CI -- when the BOP
knowingly transferred him to Taft CI and failed to notify him of the risk of

cocci that was present or of preventative measures, thereby depriving him of the capacity to take what actions were available to protect himself (for example, not heading outside during dust-storms, avoiding recreation activities during windy periods, avoiding areas not covered in cement, grass, or gravel, avoiding the chain-link fences that border the property, etc.).  The decision not to warn Plaintiff of this known risk was not one susceptible to a policy analysis grounded in social, economic, or political concerns.[3]

Additionally, in *Green*, the defendant was subject to potential liability under Arizona law specific to firefighters.  Similarly, Defendant herein is subject to potential liability under California law specific to jailers.  The *Green* Court stated that "Under Arizona law, had the firefighters been private persons under similar circumstances, they would have been liable pursuant to Arizona Revised Statutes ("A.R.S.") § 13-1706(A) for damages realized as a direct and proximate result of their setting a fire on one's own property which then burned Appellants' properties".  *Green*, 630 F.3d 1248. Similarly, under California law, had the BOP been a private person under similar circumstances (*i.e.*, a jailer having control over an inmate), they would have been liable pursuant to the "special relationship" California law imposes upon a jailer creating an enhanced duty of care.  *Giraldo*, 168 Cal. App. at 250 – 251 ("Prisoners are vulnerable.  And dependant.  Moreover, the relationship between them is protective by nature, such that the jailer has control over the prisoner, who is deprived of the normal opportunity to

---

[3]   Defendant may argue that *Green* is distinguishable because the Forest Service in *Green* created the backfire, and the BOP did not create the outbreak of cocci that occurred between 2003 and 2006.  But BOP created the risk that Plaintiff would contract disseminated cocci when it made the decision to transfer him to Taft CI (knowing of the cocci outbreak) and then did so anyway.

1  protect himself from harm inflicted by others.  This, we conclude, is the

2  epitome of a special relationship, imposed a duty of care on a jailer owed to

3  a prisoner").  Id. at 251.[4]

4                              iii.  *Whisnant* And *Green* Accurately Reflect Controlling

5                                   Decisions Regarding Safety And Failures To Warn

6          The Ninth Circuit has consistently held that the decisions regarding

7  safety and failures to warn are not susceptible to the Discretionary Function

8  exception.  In *O'Toole*, 295 F.3d 1029 (9th Cir. 2002), the plaintiffs brought

9  an action alleging that the negligent maintenance of a Bureau of Indian

10  Affairs ("BIA") irrigation system caused the river to back up on the

11  plaintiff's land, resulting in property damage.  The Ninth Circuit held that

12  the Discretionary Function exception did not apply, as the decision to spend

13  its limited funds in other ways was not protected under the exception.  Id. at

14  1031.[5]

15          In *Faber v. U.S.A.*, 56 F.3d 1122 (9th Cir.1995), the plaintiff was

16  injured diving off of a rock ledge and sued for negligence.  The Ninth Circuit

17  reiterated that, in failure to warn cases (like the present case), the

18  Discretionary Function exception was inapplicable, as it only applied in

19  "unusual circumstances".  Id. at 1125.

20  _____

21          [4]  The *Giraldo* Court made clear that while it announced the special
    relationship in its decision, it extracted the rule from a long line of
22  explanations from legal treatises, State and Federal decisions, and statutes
    and rules enunciating that same policy.  It was not establishing a new rule,
23  but formally stating a historical one.  *Giraldo*, 168 Cal. App. at 247 – 251.
          [5]  The *O'Toole* Court also provided a helpful analysis explaining the
24  broad spectrum of decisions which may or may not be protected by the
25  Discretionary Function exception.  The Court explained, as an example, that
    a government official's negligent driving that causes an accident would not
26  be protected, but a decision involving regulating and oversight of Savings
    and Loans, and the enforcement of and implementation of airline safety
27  measures, would be.  *O'Toole*, 295 F.3d at 1035.
28

1    In *Arizona Maint. Co. v. U.S.A.*, 864 F.2d 1497 (9th Cir. 1989), the

2    Government performed dynamite blasting in an area near the waterways of a

3    public service provider to determine subsidence on a proposed canal route,

4    which damaged the service provider's wells.  The Ninth Circuit held the

5    Discretionary Function exception to be inapplicable, stating "the appropriate

6    analysis laid down by our own Ninth Circuit cases, and consistent with

7    *Berkovitz,* can be summarized for purposes of this case as follows.  Conduct

8    of a government agency or employee is not immune from scrutiny as a

9    'discretionary function' simply because it involves an element of choice.  It

10    must be a choice rooted in social, economic or political policy.  If it is a

11    choice to be exercised within established objective safety standards, and the

12    plaintiffs claim negligence in failure to follow such standards, the

13    discretionary function exception does not apply." Id. at 1504.

14    In *ARA Leisure Services*, *et al. v. U.S.A.*, 831 F.2d 193 (9th Cir. 1987),

15    a tour bus operator sued the National Park Service after a bus accident that

16    was allegedly attributed to negligent design, construction, and maintenance

17    of a stretch of road maintained by the Park Service.  Id. at 193.  The Ninth

18    Circuit agreed that the Park Service's decision to design and construct the

19    road without guardrails was grounded in social and political policy, but held

20    the Discretionary Function exception to be inapplicable, stating "[w]e do not

21    agree, however, that the failure to maintain [the road] in a safe condition was

22    a decision grounded in social, economic, or political policies". Id. at 194.

23    The Court further stated "where the challenged governmental activity

24    involves safety considerations under an established policy rather than the

25    balancing of competing public policy conditions, the rational or the

26    exception falls away and the United States will be held responsible for the

27

28

1   negligence of its employees." Id. (citing Aslakson v. United States, 790 F.2d
2   688, 693 (8th Cir. 1986).

3       And in Bear Medicine, 241 F.3d at 1213 (9th Cir. 2001), an individual
4   -- without proper training -- was allowed to replace an injured worker on a
5   logging site. High winds led to a tree falling on, and killing, the individual.
6   The plaintiffs -- personal representatives of the decedent's estate -- brought
7   an action against the BIA (who operated the site) alleging negligent training
8   and supervision.   The Ninth Circuit determined the Discretionary Function
9   exception did not apply, stating that the exception "is meant to avoid judicial
10   second-guessing of governmental decisions. It is not, however, intended to
11   create inconsistent liabilities between private and government employees
12   performing identical acts." Id.

13       The Bear Medicine Court listed a history of cases involving safety and
14   failures to warn where, after an individual analysis, the Discretionary
15   Function exception was inapplicable, because the issue was not the design of
16   a safety precaution, but its potentially-negligent implementation (the latter
17   barring the application of the exception). Bear Medicine, 241 F.3d at 1215-
18   16 (citing Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1029
19   (9th Cir. 1989), Camozzi v. Roland/Miller and Hope Consulting Group, 866
20   F.2d 287, 290 (9th Cir. 1989); McCall v. United States Dep't of Energy, 914
21   F.2d 191, 196 (9th Cir. 1990) (United States' maintenance of a safe
22   workplace in the construction of an electric transmission line was exempt
23   from discretionary function analysis because the implementation of basic
24   safety measures was not a policy-based decision); McGarry v. United States,
25   549 F.2d 587, 591 (9th Cir. 1976); Routh v. United States, 941 F.2d 853 (9th
26   Cir. 1991); Seyler v. United States, 832 F.2d 120, 123 (9th Cir. 1987) (failure
27   to place speed limit sign on reservation road not a policy judgment and thus

28

1    not covered by discretionary function exception); *Summers v. U.S.A.*, 905

2    F.2d 1212 (9th Cir. 1990) (failing to provide adequate warnings about fire

3    rings on a beach in a national park does not invoke the exception)). *See Bear*

4    *Medicine*, 241 F.3d at 1215-16.

5         The cases above reiterate the consistent principle that -- absent

6    unusual circumstances giving rise to competing safety concerns -- the

7    Discretionary Function exception does not encompass claims involving

8    issues of safety or failures to warn. *See also Sutton v. Earles*, 26 F.3d 903,

9    910 (9th Cir. 1994) (victims who were on a ship that hit a Navy mooring

10   buoy, allegedly due to a failure to post speed limits, were not precluded from

11   pursuing their claims by the exception) (*stating* "A decision not to warn of a

12   specific, known hazard for which the acting agency is responsible is not the

13   kind of broader social, economic or political policy decision that the

14   discretionary function exception is intended to protect").

15        In this action, Defendant was aware of a known risk -- an epidemic

16   outbreak of cocci at Taft CI -- and chose to subject Plaintiff to that risk

17   (resulting in his current illness) when it decided to send him to Taft CI, and

18   did so, jeopardizing his safety.  Defendant further chose not to warn or

19   educate Plaintiff about it (depriving of what opportunities may have existed

20   for self-protection).  Defendant has provided no unusual circumstances

21   giving rise to competing safety conditions.  Accordingly, the Discretionary

22   Function exception does not apply.

23              iv.  The Policy Considerations Raised By Defendant Do

24                   Not Invoke The Discretionary Function Exception

25        "We have held that the Government has the burden of proving the

26   discretionary function exception applies . . . and this is not done by mere

27   subjective statements.  There must be reasonable support in the record for a

28

1  court to find, without imposing its own conjecture, that a decision was

2  policy-based or susceptible to policy analysis." *Bear Medicine*, 241 F.3d at

3  1216.  Defendant herein asserts that "[t]he decision to designate an

4  individual prisoner at a specific correctional institution is a BOP judgment

5  involving policy considerations including inmate safety, prison security and

6  effective use of prison resources, budgetary, staffing and otherwise."

7  Defendant's Motion at pp. 5 - 6 (*citing* Martz Dec. ¶11).   First, "inmate

8  safety" is an issue.  As repeatedly set forth in *Whisnant* and other cases, the

9  implementation of safety precautions are not based in policy considerations

10  within the exception. *Whisnant*, 400 F.3d at 1182-83.  Moreover, under

11  California law which is applicable here, implementation of "inmate safety"

12  measures (a) are not immune from suit, and (b) are the product of a special

13  relationship imposing an enhanced duty of care upon the jailer (*see Giraldo*,

14  168 Cal. App. 4th 231).

15       Second, transferring an inmate into a prison with known health

16  hazards, and failing to warn or educate the inmate about the risks, are not

17  matters of "prison security."  And Defendant claims that these are decisions

18  of "effective use of prison resources, budgetary, staffing and otherwise" that

19  are based in policy -- in essence, budget constraints.  But the Ninth Circuit

20  has continually held that such constraints do not invoke the exception.

21  *Whisnant*, 400 F.3d at 1184 ("'budgetary constraints underlie virtually all

22  governmental activity.'  Were we to view inadequate funding alone as

23  sufficient to garner the protection of the discretionary function exception, we

24  would read the rule too narrowly and the exception too broadly") (*quoting*

25  *O'Toole*, 295 F.3d at 1037) (*quoting ARA Leisure, et. al, v. U.S.A.*, 831 F.2d

26  193 (9th Cir. 1987)).  Allowing budgetary concerns to shield negligent

27  conduct would "permit the discretionary function exception to all but

28

1   swallow the Federal Tort Claims Act." *Whisnant*, 400 F.3d at 1184 (*citing*

2   *ARA Leisure*, 831 F.2d at 196); *see also Green*, 630 F.3d at 1254 (Hon. B.

3   Fletcher, concurring).

4               v.   Defendant's Foreign Cases Are Distinguishable

5       The majority of cases cited by Defendant are not binding on this Court

6   and factually distinguishable from this matter. *Cohen v. U.S.A.*, 151 F.3d

7   1338 (11th Cir. 1998), *Caudle v. U.S.*, 72 F.3d 132 (7th Cir. 1995), and

8   *Dykstra v. U.S. BOP*, 140 F.3d 791 (8th Cir. 1998) all involve attacks by

9   inmates on other inmates and address issues of inmate classification and

10  supervision – none of which are at issue here.  Plaintiff herein does not

11  challenge his, or anyone else's, inmate classification -- he challenges

12  Defendant's decision to send him to Taft CI during a known outbreak of

13  cocci that resulted in his current illness, the action based on that decision,

14  Defendant's decision not to warn him of the risk or preventative measures,

15  and the Defendant's failure to provide a safe environment.

16      D.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

17           SHOULD BE DENIED

18      Defendant seeks summary judgment, asking this Court to interpret

19  Plaintiff's claims as those of Medical Malpractice.  Defendant's Motion at p.

20  16.  This inaccurately frames Plaintiff's claims and fails to address the

21  genuine issues of material fact related to Plaintiff's claims of negligence.

22      Plaintiff has not asserted a claim of medical malpractice.  The

23  gravamen of the Complaint is that Defendant negligently subjected Plaintiff

24  to cocci when it decided to transferred him to Taft CI, did so, failed to warn

25  him of the risks of cocci, and failed to maintain a safe facility.  *See* Einstein

26  Dec., ¶ 4, Exh. A.  If, at trial, Plaintiff can establish that substandard care

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS / SUMMARY JUDGEMENT

1  contributed to his damages, the claim would be one for consequential

2  damages.[6]

3          Second, Defendant relies on the Martz Declaration in support of its

4  motion, stating that summary judgment is proper because "the BOP

5  contracted with [Geo] for the operation of [Taft CI]." Defendant's Motion at

6  19. However, this isn't relevant to (1) the BOP's decision to transfer

7  Plaintiff to Taft CI, or the transfer itself; (2) the BOP's decision to not warn

8  him of the risk of cocci or available preventative measures; or (3) the BOP's

9  failure to provide a safe environment. Nor is Geo's status as in independent

10 contractor relevant to Defendant's special relationship to Plaintiff and its

11 duty, under California law, to provide a safe environment to Plaintiff.

12         Further, there are genuine issues of material fact related to the BOP's

13 decision-making authority over these matters. *See* Wallach Dec. ¶¶ 4-7, 9,

14 11-13, 15, 19 – 26. And, there is ample evidence that Defendant retained

15 sufficient control over Taft CI that it had the power to determine who should

16 be transferred in and what, if any, actions should occur in relation to the

17 outbreak of cocci. Id.

18 ///
   ///
19 ///
   ///
20 ///
   ///
21 ///
   ///
22 ///

23

24         [6] To misinterpret Plaintiff's claims of negligence related to his

25 transfer and care as those for medical malpractice would be similar to the
   district court's initial mistreatment of the plaintiff's claims in Whisnant.

26 *See Whisnant*, 400 F.3d at 1184-1185 (illustrating how the district court's

27 mischaracterization of plaintiff's claim improperly "brushed aside" the
   allegations of negligence essential to determine if the exception applies).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.    CONCLUSION

For the reasons stated above, Defendant's Motion should be denied.

Respectfully Submitted,

Feldman & Wallach

Dated: July 21, 2011

By: _____

Ian Wallach, Esq.
Jason K. Feldman, Esq.
Attorneys for Plaintiff,
Arjang Panah

22